[Civ. No. 20306. First Dist., Div. Two. Oct. 15, 1962.]

FRANK H. PUCKETT, Plaintiff and Appellant, v. THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

James C. Purcell and Michael Riordan for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Bernard J. Ward, Deputy City Attorney, for Defendants and Respondents.

AGEE, J.—Petitioner appeals from a judgment denying a writ of mandate to restore him to a position as a patrolman in the San Francisco Police Department.

Prior to July 1, 1959, his employment was that of a motorman and bus operator for the Municipal Railway of San Francisco. In 1958, he took a qualifying examination given by the Civil Service Commission of the City and County of San Francisco for the purpose of acquiring a position on the eligible list for membership in the uniformed force of the city's police department. On September 19, 1958, he was notified by the commission that he had attained a standing on the eligible list, with the designation of Q-2 Policeman.

On November 18, 1958, respondent Thomas J. Cahill, Chief of Police for respondent city, wrote a letter to the Personnel Director and Secretary of the Civil Service Commission advising him that on the previous day, November 17, 1958, petitioner was personally interviewed at the Police Academy; that, in response to a direct question, he flatly denied having ever received medical treatment or consulted a doctor regarding an injury to his right knee; that in fact petitioner was then receiving a 10 per cent disability pension from the United States Government for an injury to his right knee sustained while in the military service; that, when confronted with the fact that on one occasion in 1956 and on another in 1957, his right knee was treated for traumatic bursitis by a Dr. H. B. Henderson, 2085 Sutter Street, San Francisco, petitioner stated that his injury was merely feigned by him in order to obtain time off from his employment by the Municipal Railway; that on each occasion, petitioner remained away from work for a period of five days; that on December 23, 1957, petitioner took five days off because of an alleged bad shoulder, which complaint petitioner stated was also feigned.

The letter states further that during his employment by the Municipal Railway, petitioner utilized 76½ days of 77 accumulated days of sick leave, most of which time petitioner stated was for his own use rather than because of any actual ailments or injuries.

The letter also states that during said employment petitioner had lost 16 days of employment due to suspension for infraction of rules and on 15 separate occasions had been cautioned or warned by his superiors; that, in 1953, petitioner had eight accidents for which he had been warned by his immediate superiors, and that during 1958, up to the date

of the letter, he had been involved in nine accidents, adding that eight of these were listed as "unavoidable" but were still being investigated. (Between January 20, 1959, and June 23, 1959, petitioner had nine more accidents, but, of course, these occurred after the writing of the letter. Nevertheless, these accidents indicate a pattern.)

Chief Cahill concluded in his letter: "In view of the foregoing, it is my belief that this man, because of his very poor record, should be removed from the present list of eligibles. He is either physically unfit for police duty or is untruthful regarding his physical condition."

Petitioner's counsel describes Chief Cahill's conclusion as a "whimsical, capricious and arbitrary determination." The letter was admitted in evidence and included in the record by stipulation. There was and has been no denial of the facts set forth therein. We do not think counsel's description of Chief Cahill's determination has any support in the record.

However, on the day following the chief's letter, the commission's secretary replied by letter that the commission had no authority to remove the name of an eligible from a list unless there was proof that "the individual secured standing on the list by false statement, fraud or concealment of fact made by the individual or by another on his behalf." The letter states that it does not appear that any false statements were made to the commission during the civil service examination.

The commission stated that it relied upon an opinion (No. 417) of the San Francisco City Attorney, dated August 6, 1951, regarding an eligible on a public health department list, whose work for this department as a non-civil-service employee, during a six weeks' period in 1950, had been unsatisfactory. Petitioner relies upon this opinion as support for his position.

It would serve no useful purpose in discussing this opinion or whether the commission could or could not reexamine the petitioner to determine his fitness as a police officer and thereafter remove him from the eligible list if such action was warranted. The fact is that it did not do so, and its failure to act upon information coming to it after it had declared petitioner to be eligible is not an issue to be determined herein.

There is no doubt that the commission is the body authorized by the Charter of the City and County of San Francisco

to determine the eligibility for appointment to any municipal employment, including the police department. Also, there is no doubt that the appointing officer, the chief of police in this instance, has the power to terminate the employment of a probationary employee at any time during the probationary period. (San Francisco Charter, §§ 145, 148.)

Section 148 of the charter provides in part as follows: "Whenever a position controlled by the civil service provisions of this charter is to be filled, the appointing officer shall make a requisition to the civil service commission for a person to fill it. Thereupon, the commission shall certify to the appointing officer the name and address of the person standing highest on the list of eligibles for such position."

This procedure was followed and on June 23, 1959, the chief notified petitioner to appear on July 1, 1959. On that date petitioner was sworn in as a probationary member of the police department and his appointment was then immediately terminated by the chief. Petitioner was paid for that one day but was not permitted to perform any functions as a police officer.

Following this termination, petitioner immediately reported back to the civil service commission and on the following day, July 2, 1959, he was reinstated to his former position with the Municipal Railway with full seniority rights. However, on March 21, 1960, almost nine months later, he filed this action in which he asks for restoration to his position as a police officer, unpaid salary for such period, and $5,000 attorney's fees.

Section 148 of the charter further provides: "At any time during the probationary period [one year in this case] the appointing officer may terminate the appointment upon giving written notice of such termination to the employees and to the civil service commission specifying the reasons for such termination. *Except in the case of uniformed members of the police and fire departments the civil service commission shall inquire into the circumstances.*" (Italics ours.)

We added the foregoing italics in order to emphasize the obvious, that the civil service commission has no further function to perform when the termination is of an appointment to the police or fire department. Whereas, as to all other departments, it has the duty to inquire into the circumstances of any such termination.

It is conceded that the written notice of termination was given to petitioner and to the commission, as required by the

above charter provision. This does not, of course, weaken or affect the petitioner's contention herein.

 The requirement that the appointing officer must specify the reasons for the termination does have significance, however. It supports our opinion that the police chief or the fire chief cannot act arbitrarily or capriciously but instead must act reasonably and upon substantial evidence.

It was stipulated that the issue herein could be submitted upon the record and there was no testimony adduced at the hearing. The record includes as exhibits the application form filled out by petitioner for the commission, the chief's letter of November 18, 1958, the commission's reply letter of November 19, 1958, a medical report of October 10, 1958, petitioner's record with the Municipal Railway, including his accident record, and the transcript of his sickness and disciplinary record. All of these matters were before the trial court by stipulation. No contention is made that they are not correct. All of the statements of fact herein are, of course, based upon the same record as that before the trial court.

The record shows that the chief of police was justified in concluding that petitioner lacked integrity and that he had demonstrated this many times in the course of his employment by the Municipal Railway. Also, he had been untruthful during his interview at the Police Academy.

The number of accidents he had had and the many infractions of the rules of the railway would also justifiably indicate a tendency toward recklessness or carelessness which would be incompatible with the duties of a police officer.

 This brings us to the crucial point. Does the right and duty of the police chief to terminate the appointment of an unfit probationer arise only when such probationer has demonstrated his unfitness by conduct occurring *after* he has been appointed? Or can the police chief do so *"at any time"* during the probationary period, as the charter expressly says he can, if he acts reasonably and bases his action on substantial evidence, even though that evidence concerns conduct of the probationer occurring *before* the appointment?

We think that when such evidence of unfitness becomes known to the police chief and this evidence was not made available to or considered by the civil service commission at the time it placed petitioner on the eligible list, the police

chief has the discretion to act upon such evidence by terminating the appointment.

On the other hand, if the evidence upon which the chief acted was also known to the civil service commission before it declared petitioner to be eligible, he should not have such right. To hold otherwise would be contrary to the intent and purpose of the civil service system and would in effect give the appointing officer the authority to veto the decision of the commission that a particular applicant was capable and eligible to perform the duties of the position in question.

The petitioner herein was placed on the eligible list by the commission on September 19, 1958. As we have seen, the commission took the position that it had no authority thereafter to remove him therefrom or to refuse to certify him after he had reached the top of the list and the necessary requisition had been received from the police chief.

Without qualifying the holding which we have stated above, the question might well be asked: What about the nine months' period elapsing between September 19, 1958, and July 1, 1959, when petitioner was appointed and sworn in? On November 17, 1958, he had deliberately falsified at the Police Academy interview. We have already referred to his accident record during this period and his sick leave absences based on false complaints. The commission thought that its hands were tied because no fraud had been practiced upon it during its examination of petitioner. We believe that the police chief should not likewise be prevented from exercising a discretion to act.

General authority on the subject emphasizes the importance of maintaining this discretion in the appointing officer, based on the rationale that he is the person best qualified to determine whether the probationary employee is able to perform satisfactorily in the position. (*Broyles* v. *State Personnel Board* (1941) 42 Cal.App.2d 303 [108 P.2d 774]; *Boutwell* v. *State Board of Equalization* (1949) 94 Cal.App.2d 945 [212 P.2d 20].) But it must be noted that these cases involve factual situations in which the employee's actual performance on the job has come into question.

The result which we have reached in the instant case contains an obvious danger to any civil service system. The commission determines the eligibility of the employee and certifies him as an eligible employee to the appointing officer. If the appointing officer does not believe such employee to be

eligible because of matters in existence at the time of the commission's certification, he is in effect overruling or circumventing the commission's determination of eligibility by simply terminating the appointment immediately after he makes it. Whereas, if the appointing officer could only terminate the appointment for a cause or causes arising after the appointment, this would not be contrary to the commission's prior determination of eligibility.

On the other hand, as we have pointed out before, the charter expressly treats the police and fire departments in a category different than that of all other city departments. There is no provision for a review by the commission of the circumstances involved in the termination of an appointment to the police or fire department. The reason is obvious. A police officer is in a position of trust. He also owes a duty not to act in a careless or reckless manner or in disregard of life or the safety of the public. The point need not be labored.

Here, the police chief had information which the commission did not have when it made its determination of eligibility. Rightly or wrongly, the commission believed that it did not have the authority to subsequently remove the name of an eligible from a list unless the standing on the list was secured by false statements made to the commission or by fraud practiced upon the commission or by concealment of fact from the commission. The commission did not find that this had occurred.

There is no doubt that if petitioner had followed his pattern of untruthfulness, recklessness, and disobedience of rules *after* he had commenced his employment as a police officer, the termination would be justified. We do not believe that the police chief, having the knowledge that he had, should be required to wait until petitioner had demonstrated his unfitness as a police officer before he could act as he did in order to protect the public.

In view of our conclusion, it is unnecessary to discuss the request for unpaid salary and attorney fees.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied October 25, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1962.