[Civ. No. 26331. First Dist., Div. One. Mar. 20, 1970.]

DANIEL GEE, Plaintiff and Appellant, v.
CALIFORNIA STATE PERSONNEL BOARD, Defendant
and Respondent.

COUNSEL

Richard H. Perry for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—Appellant Daniel Gee held the civil service classification of "General Auditor III" in the State Department of Justice. He was dismissed from that position, effective October 27, 1966, by the Attorney General for causes set forth in Government Code section 19572 as follows: "(f) Dishonesty. . . . (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or to his employment."

Thereafter, on proceedings taken by Gee, the State Personnel Board sustained his dismissal without modification. Gee then filed a mandamus proceeding in the superior court, seeking thereby a review of the decision of the Board. The appeal before us is taken from a judgment of the superior court denying him the requested relief.

The findings of the State Personnel Board are extensive. From them it

appears that in 1964 the Department of Alcoholic Beverage Control approved transfer of, and issued to Gee, three on-sale general licenses to sell alcoholic beverages. On each of the license applications Gee certified, under penalty of perjury: (1) that he was or would be the "sole owner" of the bar business for which the license was sought; (2) "that no person other than the applicant . . . has any direct or indirect interest in the applicant's . . . business to be conducted under the license for which this application is made"; and (3) that the total purchase price of the bar business and license was his "individual contribution" from his commercial account which was "Deposited from real estate returns and profits past 3 years." It was found as to one of the bars, the "Padre," that the business for the greater part of the two-year period following issuance of the license was in fact owned and operated by others; that Gee's only connection was to supply the license and receive 15 percent of the bar's gross receipts. It was further found that the remaining bars, the "Maurice" and "Gaylord," were in fact owned by one Chew, who personally, from his own funds, paid the entire purchase price of the businesses and licenses. Chew was found to have received all of the payments thereafter made by the operator of the "Maurice" who operated under color of the license issued to Gee.

Gee makes seven assignments of error which we now proceed to discuss.

1. It is contended that the findings of the State Personnel Board "are not supported by substantial evidence in the light of the whole record."

■ It should first be pointed out that the State Personnel Board is a statewide administrative agency which is created by, and derives adjudicating power from, the state Constitution. ■ Its factual determinations are to be accepted by the superior court and by this court if they are supported by substantial evidence. (*Shepherd* v. *State Personnel Board,* 48 Cal.2d 41, 46 [307 P.2d 4]; *Tabory* v. *State Personnel Board,* 208 Cal.App.2d 543, 545 [25 Cal.Rptr. 333].) ■ In following the substantial evidence rule we are obliged to consider the evidence in the light most favorable to the Board, giving to it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Laymon* v. *Simpson,* 225 Cal.App.2d 50, 52-53 [36 Cal.Rptr. 859].)

■ Gee concedes that the Board's findings generally are supported by substantial evidence. However, he points out several instances where he says they are not. Referring to the "Padre" bar he insists that the finding that one "Dreyfuss" was the owner is not properly supported. The record before us shows an arrangement under which Gee was to get 15 percent of the "Padre's" gross receipts; after paying expenses Dreyfuss was to keep the balance. Dreyfuss hired and fired the employees and he paid for the

workmen's compensation insurance; Gee didn't know who the employees were or how much they were paid. The bar's inventory, including the liquor, was owned by Dreyfuss who paid for some of it with cash, and for some out of his personal checking account. And Gee admitted that he "rented out" the Padre's business to Dreyfuss. This evidence amply supports the finding of the Board that Dreyfuss was the owner of the Padre bar and its business.

■ The Board's finding that Gee *knew* that his arrangement with Dreyfuss was violative of the Alcoholic Beverage Control Act is amply supported by the unusual and clandestine nature of the operation, Gee's obvious high level of intelligence, and his statement under oath that no person other than himself would have any direct or indirect interest in the business to be conducted under the Padre bar's license.

Next, Gee complains of the finding that his later transfer of the Maurice and Gaylord bars to Peter Chew was "merely a device to get Chew's name on the licenses he already owned." He claims, in effect, that the presumption "that official duty has been regularly performed" (Evid. Code, § 664), coupled with the license transfers by the Department of Alcoholic Beverage Control, operated to conclusively establish that Gee was previously the owner of the bar operations covered by the licenses. This contention also lacks merit. ■ The presumption that official duty has been performed is a rebuttable presumption; its effect is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact. (Evid. Code, § 606.) From the evidence the Board could reasonably have concluded that this burden had been met.

The "finding" that Gee's conduct was of such a nature as to bring discredit on his "agency or employment" is also questioned. This is not truly a finding; it is more in the nature of a conclusion of law which we shall discuss *post*.

2. Next, Gee contends that "Respondent's findings do not support its decision. Its action is arbitrary and capricious."

The Board concluded (1) that Gee's "conduct" in relation to the Maurice and Gaylord bars constituted "dishonesty" within the meaning of Government Code section 19572, subdivision (f), and (2) that his conduct with the Padre bar and Dreyfuss during the time that he (Gee) was employed by the state was "failure of good behavior either during or outside of duty hours which is of such a nature as to cause discredit to his agency or his employment" within the meaning of Government Code section 19572, subdivision (t).

■ "Dishonesty" connotes a disposition to deceive. (*Midway School*

*Dist.* v. *Griffeuth,* 29 Cal.2d 13, 18 [172 P.2d 857].) It " 'denotes an absence of integrity; a disposition to cheat, deceive, or defraud; . . .' " (*Hogg* v. *Real Estate Comr.,* 54 Cal.App.2d 712, 717 [129 P.2d 709].)

■    There can be no doubt that the conduct of Gee as found by the Board, including his false statements under oath as to the ownership and operation of the Maurice and Gaylord bars and the source of their purchase money, constituted *dishonesty* within the meaning of section 19572, subdivision (f), and supported the penalty of dismissal.

■    The Board's conclusion that Gee's conduct with the Padre bar during his state employment constituted "failure of good behavior . . . outside of duty hours which is of such a nature that it causes discredit to his agency or his employment," clearly based on substantial evidence, also supports the sanction of dismissal. It is noted that section 19572, subdivision (t), refers to conduct which would reflect discredit on the employing agency or the position held by the person engaging in such conduct, *regardless of whether the conduct is publicized or not. (Orlandi* v. *State Personnel Board,* 263 Cal.App.2d 32, 37 [69 Cal.Rptr. 177].)

3. Gee points out that he had severed all connection with the Maurice and Gaylord bars prior to his civil service employment by the state on February 16, 1966. He contends that the law does not authorize his dismissal for acts which occurred prior to his employment.

We note that in the proceedings before the Board Gee had objected to its jurisdiction on the ground that some of the charged improper conduct occurred before he was employed by the state. Thereafter the objection was specifically *withdrawn* by him. Although we need not consider the issue since it was not before that Board (see *Reimel* v. *House,* 259 Cal.App.2d 511, 515 [66 Cal.Rptr. 434]; *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 256 Cal.App.2d 158, 176 [64 Cal.Rptr. 26]), we nevertheless chose to review the merits of Gee's contention.

Gee was found to have shown serious attributes of dishonesty, unknown to the state prior to his employment.   ■    Honesty is not considered an isolated or transient behavioral act; it is more of a continuing trait of character.   ■    By its enactment of section 19572, subdivision (f), the Legislature indicated a strong public policy against having dishonest employees in the state service. That policy is particularly applicable to Gee's employment, for his duties as "General Auditor III" in the Department of Justice called for investigation of the general type of business offense against state law, which he himself was found to have committed.

We find little authority on the point before us. However, in *Dew* v. *Halaby,* 317 F.2d 582 [115 App.D.C. 171], the dismissal of an airport

traffic controller for homosexual conduct and use of narcotics prior to his civil service employment was upheld. Common sense indicated, the court said, that in many situations the government "must have authority to separate employees because of conduct prior to their Government employment." In a footnote (p. 586) the court added: "If it is shown, for example, that an employee of the Treasury Department, engaged in the handling of Government funds, was an embezzler in his previous employment by a commercial bank, few would say that his removal from the Treasury post on that ground would be unjustified, or that it would not 'promote the efficiency of the service.'"

*Puckett* v. *City and County of San Francisco,* 208 Cal.App.2d 471 [25 Cal.Rptr. 276], is of some assistance to us. That case concerned a *probationary* employee who was discharged for conduct, unknown to the employer prior to the employment, demonstrating unfitness. The court said (pp. 475-476): "This brings us to the crucial point. Does the right and duty of the police chief to terminate the appointment of an unfit probationer arise only when such probationer has demonstrated his unfitness by conduct occurring *after* he has been appointed? Or can the police chief do so *'at any time'* during the probationary period, as the charter expressly says he can, if he acts reasonably and bases his action on substantial evidence, even though that evidence concerns conduct of the probationer occurring *before* the appointment? [¶] We think that when such evidence of unfitness becomes known to the police chief and this evidence was not made available to or considered by the civil service commission at the time it placed petitioner on the eligible list, the police chief has the discretion to act upon such evidence by terminating the appointment."

Following the rationale of *Dew* v. *Halaby, supra,* 317 F.2d 582, as supported by *Puckett* v. *City and County of San Francisco, supra,* 208 Cal.App.2d 471, we hold, upon the facts of the instant case, that Gee's dismissal for dishonesty prior to his state employment was within the power of the Attorney General and the Board.

4. We also find a lack of merit in Gee's contention that section 19572, subdivision (t), is unconstitutional and void for uncertainty.

Discussing that provision, the court in *Orlandi* v. *State Personnel Board, supra,* 263 Cal.App.2d 32, 40, stated: "Subdivision (t) states, 'Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment.' Obviously it would be impossible for the department to list all of the types of acts which could violate this provision. There are many acts other than those set forth in subdivisions (a) to (r) of section 19572, inclusive, which are so inherently wrong and reprehensible that they need not be listed by the

agency in order for them to constitute failure of good behavior bringing discredit upon the department or the officer himself. . . ."

Statutes we deem to be reasonably similar to section 19752, subdivision (t), have been upheld against the argument that they were void for uncertainty. *Vadnais* v. *Department of Motor Vehicles,* 3 Cal.App.2d 562 [40 P.2d 559], concerned section 14 of the now repealed Civil Service Act of 1929 which authorized removal of an employee for "failure of good behavior or any other act or acts which are incompatible with or inimical to the public service." The court held a contention that the act was "invalid because not more specific in its definition" to be without merit, saying (p. 567), "No statute could be written . . . which was as specific in its provisions as contended for. . . ." In *Board of Education* v. *Swan,* 41 Cal.2d 546, 553 [261 P.2d 261], the court stated: "The fact that the term 'unprofessional conduct' is not defined by statute authorizing the dismissal of a teacher (Ed. Code, § 13521 [as that section read in 1953]), does not render it void for uncertainty." And in *Rudolph* v. *Athletic Com.,* 177 Cal.App.2d 1, 19 [1 Cal.Rptr. 898], the court held that section 470 of title 4 of the California Administrative Code providing a penalty for " 'any action by a licensee of unbecoming conduct at any time or place which is deemed by the Commission to reflect discredit to boxing or wrestling,' " was not void for uncertainty.

5. Gee next contends that the State Personnel Board lacks jurisdiction to inquire into violations of the Alcoholic Beverage Control Act.

This argument is based upon article XX, section 22, of California's Constitution which states: "[The Department of Alcoholic Beverage Control] shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause . . . that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. . . ."

While the foregoing provision appears to give to the Department of Alcoholic Beverage Control exclusive control over alcoholic beverage licenses, it cannot interfere with the duty cast upon the State Personnel Board by article XXIV, section 3, of the same Constitution to "administer and enforce . . . any and all . . . laws relating to the state civil service." One of the civil service laws that the Board is mandated to enforce is Government Code section 19572 which, as we have shown, establishes as cause for discipline of a civil service employee, "(f) Dishonesty" and "(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

The fact that Gee's conduct might *also* be cause for discipline under

the Alcoholic Beverage Control Act cannot detract from the Board's power to enforce section 19572. It might with equal force be argued that since the superior court has exclusive jurisdiction to try a civil service employee for robbery, the Board would have no power to inquire into the "dishonesty" necessarily related to such a charge.

The contention must fall.

6. The next contention is closely related to that which we have just discussed. Gee argues, "Whether or not the relationship between the Appellant and Mr. Dreyfuss constituted a violation of the Alcoholic Beverage Control Act was a decision exclusively within the province of the Alcoholic Beverage Control authorities under article XX, section 22 of the California Constitution." We would agree with Gee's argument as stated. ▮ But whether or not the relationship between Gee and Dreyfuss, together with Gee's other conduct concerning the Padre bar license, was also violative of civil service statutes and cause for his dismissal was a matter within the province of the Board under California Constitution article XXIV, section 3, and Government Code section 19572, subdivision (t).

▮ 7. Lastly, Gee contends that the superior court abused its discretion in denying him leave to amend his petition for mandate by alleging matters occurring after the Board's decision, as follows: (1) The State Department of Employment had ruled Dreyfuss was Gee's employee; (2) The Department of Alcoholic Beverage Control had allowed the transfer of the Padre bar license from Gee to another without determining that Dreyfuss was not an employee; (3) Gee had been used by his late employer, the Department of Justice, as a witness in litigation; and (4) Gee had been obliged to pay tax liabilities and other expenses of the Padre bar.

We observe no abuse of discretion. No contention is made, or could properly be made, that the rulings of the Department of Employment and an unnamed taxing agency, or the lack of a Department of Alcoholic Beverage Control finding, in any way had res judicata effect upon the issues here before the Board and the superior court. Such action and inaction may have been by consent or by default, or based on estoppel or evidence other than that before the Board; in any event it was hearsay. The calling of Gee as a witness has no discernible relation to his honesty or character traits; the fiction that a party "vouches" for his witness is a vestige of early common law which is now outmoded. (*Lantz* v. *Stribling*, 130 Cal.App.2d 476, 482 [279 P.2d 112].) Allowance of the proposed amendments by the superior court would necessarily clash with the rule we have pointed out *ante*—that since a statewide constitutional agency is concerned, the court's jurisdiction was limited to a determination whether there was substantial evidence *before the Board*. And the case against Gee

was strong; there was in any event no prejudicial error. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1970.