[Civ. No. 15170. Third Dist. Nov. 18, 1975.]

JOHN M. KEELY, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

**COUNSEL**

Loren E. McMaster, Michael D. Stump, Allen R. Link and Jeff Paule for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**PARAS, J.**—Appellant, a prison guard, was fired by the Department of Corrections for refusing to divest himself of the ownership and operation of a liquor store. After a hearing, the State Personnel Board upheld his dismissal. The superior court denied a petition for a writ of mandate and he appeals.

The facts are not in dispute. Appellant was a correctional officer for approximately four and one-half years prior to his dismissal on March 7, 1974. He had a good work record and had received merit salary adjustments and promotions. In early 1973, he learned of an opportunity to purchase a liquor store located 12 to 15 miles from the prison in which he worked, the California Men's Colony at San Luis Obispo. The store also sold delicatessen products, and included living quarters for appellant and his family. Appellant was aware of Department of Corrections Director's rule D-5225 which forbade engaging in any ". . . employment, enterprise or activity inconsistent or incompatible or in conflict with the program of the Department of Corrections, . . . [including but not limited to] . . . [e]mployment at any bar, . . . ." The rule also stated that other activities may also be prohibited, and required that any employee wishing to engage in outside employment submit a written statement to his supervisor. Accordingly, on March 15, 1973, appellant submitted a written statement of his intention to purchase a liquor store, which included an off-sale liquor license. He appended a copy of rule 62 of the Alcoholic Beverage Control Board, which specifically permits a correctional officer to hold a liquor license, while prohibiting such license to peace officers generally.

On March 16, 1973, appellant's request was denied. Nevertheless, believing the liquor store to be "a chance of a lifetime," appellant purchased it in late September without informing his employer. He and his family moved into the living quarters and operated the store with three part-time employees. Appellant worked one eight-hour shift each week behind the counter on one of his days off and performed other work on the books and in the storage area.

On January 8, 1974, while appellant was working behind the counter, a highly intoxicated man entered the store to purchase liquor. His manner was loud and offensive, and he asked appellant whether he was a correctional officer. Appellant said yes. The man said he had been in all the prisons, and that he was presently on parole from the California

Men's Colony—West Facility, in San Luis Obispo, and was not supposed to drink. He gave his parole officer's name. Upon appellant's refusal to sell him any liquor, he became agitated and said "You're not here all the time," which appellant took to be some sort of implied threat.

Appellant was aware that this person had been patronizing his store for some time and was "a little strange," but did not know until this incident that he was on parole. He contacted the parole officer, who expressed concern and asked for a written memo on the incident. Appellant complied on January 10, 1974, submitting the original to his own supervisor, knowing this would reveal his purchase of the store. Upon his refusal thereafter to divest himself of ownership of the store, he was discharged on March 8, 1974.

■ The role of the court in this type of case is to review the entire record in order to determine whether there was substantial evidence to support the decision of the board. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638-639, fn. 22 [83 Cal.Rptr. 208, 463 P.2d 432]; *Greenberg* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 792, 799 [112 Cal.Rptr. 626]; *Long* v. *State Personnel Bd.* (1974) 41 Cal.App.3d 1000, 1008 [116 Cal.Rptr. 562].)

I

■ Appellant contends first that the board's decision is not supported by substantial evidence because the Department of Corrections' policy was against *employment* in areas where liquor is sold or dispensed, whereas he was primarily an *owner,* and "was, and still is, amenable to completely divorcing himself from the operation of the store."

As we view it from the evidence presented, the reason for the policy and rule prohibiting a correctional officer from operating a liquor store is to minimize the likelihood of placing himself in the position of a complaining witness in a parole revocation proceeding. Resolution of disputed factual questions at such a hearing, presided over by other members of the Department of Corrections, could create the appearance of injustice. Moreover, if parole is revoked, the correctional officer might find himself guarding the same inmate, thus creating tension and interfering with the goal of rehabilitation. What distinguishes liquor stores from other kinds of businesses in this regard is that many parole agreements contain a requirement that a parolee either totally abstain

from alcohol, or abstain from excess drinking. Until recently, this was a standard requirement in *all* such agreements. (See Criminal Law Practice II (Cont. Ed. Bar 1969) § 23.147, pp. 582-586.) Total abstinence is required by statute if the parolee committed certain sex offenses while intoxicated or addicted to alcohol. (Pen. Code, § 3053.5.)

The reality of the risk is well illustrated by the incident in appellant's liquor store which brought his activity to the attention of the department. While it is true, as appellant contends, that appellant could have come into contact with the parolee at any location—at a park, in a bookstore, or in a church—the possibility of an encounter with an inebriated parolee, or a parolee in possession of alcohol in violation of a condition of parole, is substantially increased by ownership of a liquor store.

Despite appellant's suggestion that he could completely divorce himself from the business, he made no such offer at the hearing; he testified that he hoped that "in two or three years the store would run itself." By negative implication, the store could *not* have run itself without appellant at the time he was discharged. Nor would the problem be resolved if we assume appellant could have financially afforded to stop working one day a week behind the counter, for he would still continue to *live* on the premises; and he asserted at the hearing that if an incident occurred on the premises while he was at home, it was very probable that he would become involved. Moreover, his continued ownership would mean that his wife would continue to operate the business, with the likelihood that *she* would become a witness in a parole revocation proceeding, creating similar problems. This is not to say that the department may regulate the activities of the wife of an employee. But the department may certainly consider the activities of the wife in determining the extent to which an employee can divorce himself from the operation of an inconsistent business activity.

We need not strictly define the degree of personal involvement in an inconsistent business activity that should forbid its ownership by a prison guard. Our role is simply to determine whether, examining the record as a whole, there is sufficient evidence to support the board's determination that *appellant's* involvement was inconsistent or incompatible with his employment by the Department of Corrections. We believe that the evidence set forth above, considered in light of the entire record, was sufficient to support the board's determination.

## II

■ Appellant's next contention is that even if the department could · prohibit appellant from owning or working in a liquor store, it did not do so properly. He contends that the director's regulations under section 19251 of the Government Code did not specifically state that such activity was incompatible, and the use of the "catch-all" category 13 (see *infra*) to prohibit the activity was impermissible.

Section 19251 of the Government Code provides in part:

"A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his duties as a state officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed.

"Each appointing power shall determine, subject to approval of the board, those activities which, for employees under his jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees. Consideration shall be given to employment, activity or enterprise which: . . . (c) involves the performance of an act in other than his capacity as a state officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement by such officer or employee or the agency by which he is employed, . . . ."

The Department of Corrections, pursuant to section 19251, promulgated a statement of incompatible activities which was approved by the State Personnel Board in 1966.[1] In pertinent part, that statement reads as follows:

"In conformance with the law, no employee of the Department of Corrections shall engage in any other employment, enterprise or activity inconsistent or incompatible or in conflict with the program of the Department of Corrections. Employment and conduct deemed to fall in such categories includes but is not limited to the following:

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

---

[1]Plaintiff argues that the State Personnel Board's "Personnel Transaction Manual," section 850.21 clearly denotes the scope of section 19251: "Specific activities must be included in the Incompatible Activities Statements. Vague or all-inclusive prohibitions cannot be made." But the argument cuts against plaintiff; by approving the department's Incompatible Activities Statement, presumably the board found it acceptable under this standard, i.e. not vague or all-inclusive.

"3. Employment at any bar, race track, legal or illegal gambling establishment, or which involves operation or participation in gambling in any form, or any night club.

". . . . . . . . . . . . . . . . . .

"13. The employment and activities listed above do not necessarily include all those which may be prohibited. [Every employee] [b]efore engaging in any outside employment, activity or enterprise, [shall] submit a statement to [his] division or institutional head naming the prospective employer, if any, his address and telephone number, and outlining the proposed duties or activities. This must be in sufficient detail to enable the division or institutional head to determine whether, in his opinion, the proposed activity does fall in the prohibited class. The division or institutional head must notify [the employee] of his findings." (See Rules & Regulations of the Director of Corrections, DR-5225.)

The regulation contemplates that not all incompatible activities can be specifically listed, and provides a requirement that employees obtain clarification. Such a rule is not improper, given the wide range of possible human activity.

Appellant's contention that he is being punished for failing to meet vague standards is not well taken. He was informed *prior* to his purchase of the liquor store that his operation would be inconsistent with his employment, and the department complied with its own regulations in so informing him. Appellant's attack is more properly addressed to the reasonableness of the department's use of paragraph 13, rather than to a claim that he is being punished under a vague standard. As we have stated, we think a general provision such as paragraph 13 is appropriate in this area.

A similar provision in subdivision (t) of section 19572 of the Government Code was upheld as necessary and neither vague nor uncertain in *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 512 [102 Cal.Rptr. 758, 492 P.2d 1006]. The court noted that the " *'failure of good behavior must be of such a nature that it reflects upon the employee's job, and cannot be just any behavior which the agency might consider improper.'* " (Italics in original.) Similarly here, the department can only prohibit activities which are "clearly inconsistent, incompatible, in conflict with, or inimical" to his employment. In *Nightingale,* the employee was disciplined for *past* conduct under the regulation.

It follows, *a fortiori*, that appellant can be disciplined for *future* conduct after notice.

### III

■    Appellant's third contention is that the Alcoholic Beverage Control Board has exclusive authority to determine who can lawfully own a liquor business.

In *Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713 [85 Cal.Rptr. 762], the plaintiff also contended that the State Personnel Board lacked jurisdiction to inquire into violations of the Alcoholic Beverage Control Act because article XX, section 22, of the California Constitution gave the Department of Alcoholic Beverage Control the exclusive power and control over alcoholic beverage licenses. The court rejected the contention, stating: "While the foregoing provision appears to give the Department of Alcoholic Beverage Control exclusive control over alcoholic beverage licenses, it cannot interfere with the duty cast upon the State Personnel Board by article XXIV, section 3, of the same Constitution to 'administer and enforce . . . any and all . . . laws relating to the state civil service.' . . .

"The fact that Gee's conduct might *also* be cause for discipline under the Alcoholic Beverage Control Act cannot detract from the Board's power to enforce section 19572. . . ." (*Gee, supra*, pp. 721, 722.)

Additionally, the court held in *Gee* (at p. 722) that the question of whether or not appellant's conduct was also violative of a civil service statute and cause for his dismissal was a matter within the province of the board under California Constitution, article XXIV, section 3, and section 19572 of the Government Code. Accordingly, the Department of Alcoholic Beverage Control has not in fact preempted the field of liquor control in the State of California where it conflicts with the State Personnel Board which is also mandated by the same Constitution.

The difference between the ABC's rule and the Department of Corrections' rule is explainable in terms of the respective areas of concern of the two agencies. The ABC is concerned that liquor laws be properly enforced. Since peace officers enforce these laws, their employment in the liquor trade might lead to nonenforcement or lenient enforcement of violations on their premises by fellow officers, or place them in the unpleasant and conflicting position of arresting a customer of their own business. Since correctional officers have no such responsibility (beyond that of an ordinary citizen) to enforce liquor laws, the ABC exempts them. On the other hand, the Department of Corrections is concerned with parolees and parole conditions. A correctional officer with a customer in his liquor store who is known to be violating a parole condition is faced with exactly the same conflict as a policeman tavern-owner whose customer violates the law: whether to quietly take the man's money, or turn him in and become the complaining witness. The department's rule properly seeks to minimize this possibility.

Since we have determined that the department's order was valid, it is unnecessary to consider appellant's fourth contention, that an invalid order cannot form the basis for punitive action. ■ We note, however, that the action of the department in discharging appellant, although severe, was necessary in view of appellant's refusal to divest himself of the conflicting business. Having determined that a conflict existed, it could not allow appellant to maintain the conflict. At the hearing, appellant was asked: "If you were given the opportunity by the institution today to go back to work if you divested yourself of the liquor store would you still retain the liquor store?" He answered: "No, I'm afraid I couldn't do that." The board was left with no alternative but to uphold the dismissal.

## IV

■ Appellant's final contention is that due process requires a hearing prior to dismissal. In accordance with statutory procedures in effect at the time (Gov. Code, § 19574), appellant was given a written "notice of punitive action" on March 8, 1974, advising him of his dismissal effective at the close of business March 7, 1974, detailing the aforedescribed reasons and advising of the right to a future hearing.

Therefore no hearing preceded the punitive action. On April 19, 1974, however, a full hearing was held at appellant's request, and the decision of the State Personnel Board upholding the punitive action was rendered on May 8, 1974.

*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] was decided by the Supreme Court on September 16, 1975, declaring section 19574 of the Government Code violative of due process by providing for punitive action without a prior hearing. On that authority, we must sustain this contention of the appellant and declare the punitive action of March 7, 1974, void. It was not until a hearing was actually held and completed, on April 19, 1974, that the constitutional safeguards to which appellant was entitled were fulfilled. Since on that date appellant was accorded a full evidentiary hearing (see *Skelly, supra,* p. 220, fn. 34) which we have hereinabove determined to be substantively sound and to justify the disciplinary action, the dismissal was constitutionally valid as of that date.

The judgment is reversed insofar as it determined the appellant's dismissal to be valid as of March 8, 1974; on remand, the trial court shall issue its writ commanding the Board to substitute April 19, 1974, as the effective date of the dismissal and to compensate appellant accordingly. In all other respects the judgment is affirmed.

Puglia, P. J., and Janes, J., concurred.

A petition for a rehearing was denied December 4, 1975, and on December 3, 1975, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied January 14, 1976. Mosk, J., was of the opinion that the petition should be granted.