Filed 9/29/23  Ramirez v. California State Personnel Board CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL RAMIREZ,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>        Defendant and Respondent,<br><br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION,<br><br>        Real Party in Interest. | A165897<br><br>(San Francisco City & County Super. Ct. No. CPF-19-516933) |

Plaintiff Michael Ramirez appeals from the denial of his petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5 seeking to set aside his termination from the California Department of Forestry and Fire Protection (Cal Fire).  Ramirez contends that respondent California State Personnel Board (Board) abused its discretion by approving his dismissal.  We affirm.

**BACKGROUND**

Ramirez commenced his employment with Cal Fire in 1994.  In 2010, Ramirez was appointed to the position of Battalion Chief

1

at Cal Fire's training academy in Ione, California (the Academy). In July 2012, Ramirez became the Assistant Chief at the Academy. One of the programs that Ramirez oversaw in both positions was Cal Fire's Fire Fighting Academy (FFA).

Cal Fire dismissed Ramirez from his position as Assistant Chief effective January 23, 2015. In its notice of adverse action, Cal Fire alleged that Ramirez violated Government Code[1] section 19572, subdivisions (c) through (f), (m), (o), (p), (r), and (t)[2] by: (1) consuming alcohol and allowing FFA cadets to consume alcohol while on duty at a graduation dinner; (2) failing to properly respond to violations of Cal Fire's Equal Employment Opportunity (EEO) policy, including an incident where supervisor Moe Fleming slapped Cadet Samano on the buttocks while she was stretching during physical training, an incident where Fleming made inappropriate sexual statements to another female employee, and incidents were Cal Fire male employees displayed

---

[1] All further statutory references are to the Government Code unless otherwise stated.

[2] This statute provides, in relevant part: "Each of the following constitutes cause for discipline of an employee, or of a person whose name appears on any employment list:
[¶] . . . [¶] (c) Inefficiency. [¶] (d) Inexcusable neglect of duty. [¶] (e) Insubordination. [¶] (f) Dishonesty. [¶] . . . [¶] (m) Discourteous treatment of the public or other employees. [¶] . . . [¶] (o) Willful disobedience. [¶] (p) Misuse of state property. [¶] . . . [¶] (r) Violation of the prohibitions set forth in accordance with Section 19990 [incompatible activities]. [¶] . . . [¶] (t) Other failure of good behavior either during or outside of duty hours, which is of such a nature that it causes discredit to the appointing authority or the person's employment." (§ 19572, subds. (c)–(f), (m), (o), (p), (r), & (t).)

inappropriate images of women; (3) failing to recognize and respond appropriately to the incident with Cadet Samano as a workplace violence incident; (4) misusing state time and property, including by driving a state vehicle for personal use while assigned to the Eiler Fire in 2014; (5) disobeying orders in December 2014 from Staff Chief Tyler related to Ramirez's placement on administrative time off (ATO); and (6) being dishonest during an administrative interview by the California Highway Patrol (CHP) regarding Ramirez's employment misconduct in September 2014, and to Chief Tyler in December 2014. Ramirez appealed his dismissal to the Board.

***The First Board Decision***

After a lengthy administrative hearing, the Board adopted the proposed decision of the administrative law judge (ALJ). The Board determined that Cal Fire failed to prove that Ramirez consumed alcohol while on duty or that he misused state time.[3] However, the Board concluded that Cal Fire proved all remaining allegations and approved dismissal as the just and proper penalty.

Ramirez filed a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5). The trial court granted the writ in part and remanded the matter to the Board. The trial court determined that the allegations related to the incident where Fleming made inappropriate sexual comments to a female employee fell outside of the applicable statute of limitations, as

---

[3] The Board dismissed the charges of inefficiency and discourteous treatment.

3

did any claims that Ramirez made false statements to CHP regarding this incident. The court also found that the ALJ had inappropriately limited Ramirez's cross-examination of Cadet Samano.

### *The Second Board Decision*

On remand, the Board set aside its prior decision and held a hearing allowing further cross-examination of Cadet Samano. After the hearing, the Board adopted the ALJ's revised decision. The Board found that Ramirez had not testified credibly and sustained many of the allegations against Ramirez.

The Board found that Ramirez committed inexcusable neglect of duty (§ 19572, subd. (d)) on numerous occasions as follows: Ramirez allowed cadets to drink alcohol while on duty at an April 2012 graduation dinner, intentionally violating Cal Fire's policy prohibiting the consumption of alcohol while on duty.

Ramirez failed to adhere to Cal Fire's policies preventing discrimination and sexual harassment. Supervisors are responsible for preventing discrimination and harassment, setting the tone for a workplace free of discrimination and harassment, and taking appropriate measures whenever they should reasonably know that discrimination or harassment may be occurring. Further, any Cal Fire employee who witnesses an incident of discrimination or harassment is responsible for reporting the conduct to an appropriate supervisor. Ramirez was grossly negligent in witnessing and failing to report to any supervisor Fleming's slap of Cadet Samano's buttocks in April 2012, and in failing to prevent male employees from displaying

4

inappropriate images of women on Academy grounds. The Board found that sharing such images was a common practice under Ramirez's supervision, and his attitude regarding Cal Fire's sexual harassment policy was so lax that one subordinate employee felt free to text a link to a swingers' club website to Ramirez's department-issued cell phone.

Ramirez acted with gross negligence in failing to take action to address the 2012 incident between Fleming and Cadet Samano as a potential matter of workplace violence. Cal Fire had a zero-tolerance policy for workplace violence, Fleming struck Cadet Samano with force, and his slap was unwelcome physical contact.

Ramirez also committed inexcusable neglect of duty through his intentional use of a state vehicle for personal business without permission in violation of Cal Fire policy. In 2014, Ramirez was assigned to the Eiler Fire and worked 24-hour "on" shifts followed by 24-hour "off" shifts or rest periods. Without requesting permission to travel to West Sacramento, Ramirez drove there on a 24-hour rest shift to attend a concert with his wife, a 300-mile roundtrip. The same conduct violated section 19572, subdivision (p) (misuse of state property).

Next, Ramirez committed insubordination and willful disobedience. (§ 19572, subds. (e), (o).) In December 2014, Ramirez was placed on ATO and contacted Chief Tyler for permission to return his assigned state vehicle to the Academy and to collect personal items from his office. Chief Tyler granted the request and instructed Ramirez to check in with him at the

Academy at 10:00 a.m. on December 30, 2014. Ramirez came to the Academy with other officers who received ATO letters on December 30, 2014, sometime before 6:00 a.m., and he did not check in with Chief Tyler. When Chief Tyler found Ramirez on Academy grounds, Ramirez denied that Chief Tyler had instructed Ramirez to check in at 10:00 a.m.

The Board found that Ramirez violated section 19990 by engaging in activity incompatible with his duties and through failure of good behavior that discredited Cal Fire. (§ 19572, subds. (r), (t).) As to the former, Ramirez violated Cal Fire's incompatible activities policy by driving to West Sacramento during the Eiler Fire, which rendered him unable to promptly respond to a call to duty had one been made. As to the latter, Ramirez discredited Cal Fire and his employment by failing to enforce its no-drinking policy and by failing to foster a working environment free from sexual harassment. Ramirez was in a leadership position and was expected to set an example. The example he set was that the no-drinking policy does not apply to celebrations, and sexual harassment is not important. "But, employees who drink on duty can become unable to safely perform their duties and subject [Cal Fire] to liability. And sexual harassment limits the ability of qualified female employees to perform their duties, as well as subjects [Cal Fire] to liability."

Finally, the Board determined that Ramirez was intentionally dishonest during the CHP investigation and later to a superior officer. In the CHP interview, Ramirez "falsely denied

6

being present when Captain Fleming slapped Cadet Samano on the buttocks; but [he] was present." He "inaccurately described Captain Fleming's action as tapping Cadet Samano; but [he] was aware that Captain Fleming slapped Cadet Samano." He "falsely denied ever seeing inappropriate images of women displayed on Academy grounds; but he had viewed images of women clad in underwear or partially undressed." Ramirez misleadingly described the inappropriate images as family photos and the link of the swingers' website sent to him as spam. Ramirez also lied when he falsely asserted to Chief Tyler that Chief Tyler had not instructed him to check in at the Academy at 10:00 a.m. on December 30, 2014. The Board found that, "[a]s a whole, when questioned about his actions, [Ramirez] did not respond with trustworthiness and integrity, but with the intent to obscure damaging facts and minimize his potential exposure to discipline."

The Board considered the factors from *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217–218 (*Skelly*)—the extent to which the employee's conduct resulted in, or if repeated, is likely to result in, harm to the public service; the likelihood of reoccurrence; and the circumstances surrounding the misconduct—when making its penalty decision.

Addressing harm to the public service, the Board found that Ramirez's neglect of duty discredited himself and Cal Fire, causing harm to the public service. Despite being responsible for setting an example, Ramirez failed to follow procedures and demonstrated a lax attitude about the environment at the

7

Academy. The Board reasoned that the Academy is significant to the public service because it trains cadets in firefighting, and the public interest is served when cadets can train without being subjected to inappropriate sexual conduct that may be distracting, embarrassing, or stressful, whether or not it amounts to unlawful sexual harassment. Ramirez was so inattentive to his responsibility that he skipped through online training without reading the material, his subordinates were emboldened to share suggestive photographs of women, and one slapped Cadet Samano in Ramirez's presence. The Board found that Cal Fire cannot enforce its policies if its supervisory employees do not take them seriously. Further, if continued, Ramirez's conduct could harm the public service by damaging cadets' ability to successfully train at the Academy, and by setting a poor example for cadets to carry back to their home units and forward in their careers.

Ramirez's failure to prohibit alcohol consumption at the graduation dinner fostered behavior that he knew was prohibited, undermined Cal Fire's efforts to eliminate that behavior, and harmed the public service. His misuse of state property also harmed the public service because the public is entitled to have state resources used for purposes that promote the public service. Finally, his insubordination and dishonesty were discrediting, and dishonesty erodes public trust and damaged Cal Fire's ability to trust in Ramirez to act independently in properly executing his duties.

The Board next determined that Ramirez's failure to accept responsibility for his actions and dishonesty about his misconduct suggested a significant likelihood of reoccurrence.

In mitigation, the Board acknowledged that Ramirez contended his actions involved reactions to others' misconduct and not his own misconduct, but it determined that Ramirez was ignoring his misuse of state property, engagement in an incompatible activity, dishonesty, insubordination, and failure to attend to his own job responsibilities. The Board recognized the favorable fact that Ramirez had not sustained a previous adverse action in the 3 years he worked as a seasonal employee or the 17 years he worked as a permanent employee. It considered progressive discipline and a lesser penalty, such as a demotion, that would remove Ramirez from a supervisory role. However, the Board ultimately concluded that progressive discipline was not warranted because Ramirez's conduct was intentional, his deliberate decision making evidenced poor judgment, and he was dishonest. "Consideration of all relevant factors establishes that penalty modification is unwarranted. Dismissal is harsh, but it is a just and proper penalty."

### The Second Writ Petition

Ramirez challenged the Board's revised decision by filing another petition for a writ of administrative mandamus, and the trial judge who decided the first writ heard the matter. The trial court denied the writ, begrudgingly concluding that the Board's findings were sufficient to support its decision to terminate Ramirez. The court stated that the dishonesty and

insubordination findings themselves sufficed to uphold dismissal. The court noted that if it had been the trier of fact, it would have made different factual determinations, and it would not have selected dismissal as the appropriate penalty. However, given the standard of review, the court found that a reasonable person could have found that termination was proper, and reversal of the Board's decision would constitute an impermissible substitution of the court's discretion for that of the Board as to the degree of punishment imposed.

## DISCUSSION

## I.  Governing Law and the Standard of Review

The Board enforces civil service statutes and reviews disciplinary actions. (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584.)  " 'The Board acts as an adjudicatory body, weighing the evidence to determine the facts and exercising discretion to ascertain whether the charges sustained are sufficient for the discipline imposed. [Citation.]  Because the Board is an agency of constitutional authority, its findings of fact are reviewable in an administrative mandamus proceeding under the substantial evidence test. [Citation.]  "The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence." ' " (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1403–1404 (*Pollak*).)

" '[In] a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative

10

body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly, supra*, 15 Cal.3d at p. 217.) "In considering whether such abuse occurred in the context of public employee discipline, . . . the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Id.* at p. 218.)

" ' " 'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' " ' " (*County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1615.) "If reasonable minds may differ as to the propriety of the penalty imposed, there has been no abuse of discretion. [Citation.] It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46–47.)

" '[I]n a mandamus proceeding, an appellate court vis-a-vis *the trial court*, conducts a de novo review concerning possible abuse of discretion by the administrative agency. [Citation.] The trial court's determination of abuse or nonabuse of discretion by the administrative agency is of no concern to the appellate court. The appellate court gives no deference to the trial court's determination.' " (*Pollak, supra*, 88 Cal.App.4th at p. 1404.) " 'Conversely, . . . in a mandamus proceeding an appellate court

11

vis-a-vis *the administrative agency*, does not independently or 'de novo' determine penalty.' " (*Ibid.*)

## II.    Analysis

Here, the Board's misconduct findings are not in dispute. Rather, Ramirez claims that no reasonable person could find that his dismissal was proper, so the Board abused its discretion in selecting his penalty.  We do not agree.

The finding of dishonesty itself supports the termination. "Dishonesty is incompatible with the public trust."  (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 231.)  "By its enactment of section 19572, subdivision (f), the Legislature indicated a strong public policy against having dishonest employees in the state service."  (*Gee v. California State Personnel Board* (1970) 5 Cal.App.3d 713, 719 (*Gee*).)

Here, the CHP conducted an administrative investigation into incidents of Ramirez's alleged employment misconduct, Ramirez lied about facts related to those incidents, and he did so with "intent to obscure damaging facts and minimize his potential exposure to discipline."  Ramirez claims that there was no harm or likely harm to the public service from his dishonesty, but he hindered resolution of matters under investigation.  (Cf. *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, 722 [stating charges against fellow officer would have been easier and more quickly proven if plaintiff had simply responded honestly to investigators when first questioned].)  And the Board determined that Ramirez's dishonesty harmed the public service by discrediting himself,

12

damaging Cal Fire's ability to trust him, and eroding the public trust in Cal Fire and its employees as agents for the public good.

Ramirez also argues that his dishonesty was not important and went to immaterial matters. However, Cal Fire has a zero tolerance policy for workplace violence, sexual harassment, and unprofessional conduct. Ramirez was under investigation for employment misconduct, including his improper handling of an incident of sexual harassment and workplace violence and his toleration of displays of photos of women in underwear or partially nude on Academy grounds. Ramirez lied about facts that went to the severity of the incident with Cadet Samano— namely witnessing a slap to her buttocks that she described as a 5 of 10 in terms of force and that made her embarrassed and uncomfortable. He lied about seeing inappropriate images displayed by male employees. And he did so after CHP admonished him that he had a duty to respond truthfully and that failure to do so could result in dismissal.[4] Ramirez also lied to his supervisor about a fact central to the disobedience charges. The Board could reasonably conclude that Ramirez's repeated dishonesty was sufficiently serious to warrant dismissal. (See *Cvrcek v. State Personnel Board* (1967) 247 Cal.App.2d 827, 828– 829 [auditor's impermissible taking of documents that were not "particularly remarkable or sensitive" from office file was "relatively unimportant," but his dishonesty about that conduct

---

[4] The CHP investigator also listed on the record the matters that were under investigation at the beginning of the interview.

13

supported dismissal]; *Gee*, *supra*, 5 Cal.App.3d at pp. 716, 718–719 [auditor's false statements on transfer application for alcohol license made prior to his state employment constituted dishonesty and supported penalty of dismissal].)

Next, the Board found a likelihood of reoccurrence. Ramirez argues that the isolated nature of certain incidents of his misconduct shows that his behavior is unlikely to reoccur, but his argument does not address his dishonesty. The Board observed that dishonesty is a continuing character trait, and it found that Ramirez made false statements in the CHP investigation, he made a false statement to his superior, and he failed to testify reliably at the ALJ hearing. These findings substantiate the Board's reasonable conclusion regarding the likelihood of reoccurrence. (*Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 972 ["Dishonesty is not an isolated act; it is more a continuing trait of character."]; *Gee*, *supra*, 5 Cal.App.3d at pp. 718–719 [same].)

As for the circumstances surrounding the misconduct, Ramirez argues that numerous facts mitigated the findings regarding inexcusable neglect of duty, insubordination, willful disobedience, and misuse of his state vehicle, and he claims that termination was too severe a penalty because his misconduct related only to his performance as a supervisor. In doing so, however, Ramirez does not provide any facts that mitigate what the Board determined to be his intentional decision to lie to the CHP and Chief Tyler.

14

Finally, we reject Ramirez's claim that, because he has been an employee for many years, progressive discipline was the only reasonable option. The question of whether progressive discipline was appropriate rests within the Board's discretion. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 76; *Talmo*, *supra*, 231 Cal.App.3d at p. 230.) The Board embraces progressive discipline to treat "problems of poor work performance," (*In re R.N.* (1992) SPB Precedential Dec. No. 92-07, p. 6, fn. 3), but, as Ramirez recognizes, progressive discipline is not required in cases of serious willful misconduct (*ibid.*). The Board acknowledged Ramirez's service as a mitigating factor; however, it found that his misconduct was not a performance issue and was instead the product of deliberate decision making that evidenced poor judgment. In addition, the Board reasoned that Ramirez's dishonesty and lack of remorse weighed in favor of the harshest penalty, as Cal Fire should not be required to retain an untrustworthy employee. The Board in this case could reasonably conclude there was harm to the public service, and Ramirez had exhibited repeated dishonesty and poor judgment such that his decision making could no longer be relied upon, which meant that terminating his employment was proper.

While reasonable minds could differ on the penalty, the Board affirmed Ramirez's dismissal. "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Deegan v. City of Mountain View*, *supra*, 72 Cal.App.4th at p. 47.) This is not such an exceptional case.

15

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.

BROWN, P. J.

WE CONCUR:

STREETER, J.
HIRAMOTO, J.*

*Ramirez v. California State Personnel Board* (A165897)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16