[No. C038494. Third Dist. Sept. 23, 2002.]

SULEMAN A. MOOSA, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
CALIFORNIA STATE UNIVERSITY, CHICO, Real Party in Interest and
Respondent.

**COUNSEL**

Ishikawa Law Office and Brendon Ishikawa for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Christine Helwick and Karen L. Robinson for Real Party in Interest and Respondent.

## OPINION

**ROBIE, J.**—The Board of Trustees of the California State University (the Trustees) demoted Suleman A. Moosa from full professor to associate professor at California State University, Chico (CSUC) for five years based on various actions by Professor Moosa which CSUC claimed constituted unprofessional conduct and/or the failure or refusal to perform the normal and reasonable duties of his position. On review of that decision, the State Personnel Board (the Board) determined only one of the allegations against Professor Moosa was supported by substantial evidence: Professor Moosa's "failure to comply with his Dean's directive to develop and submit an 'Improvement Plan.'" The Board recognized Professor Moosa's refusal to develop and submit an improvement plan was part of a "battle" with the dean that "was a microcosm of [a] larger ideological struggle concerning educational policy at CSUC that was occurring at the time." Nonetheless, the Board concluded Professor Moosa's "willful refusal to comply with [the dean's] valid directive was improper." Because the Board dismissed all charges except this charge for lack of substantial evidence, however, the Board modified the demotion from five years to one academic year.

In a mandamus proceeding in the superior court, Professor Moosa unsuccessfully sought to overturn the Board's decision. On appeal, we agree with the superior court that substantial evidence supports the Board's finding that Professor Moosa willfully refused to comply with the dean's directive to develop and submit an improvement plan. We conclude, however, that the dean's directive was invalid as a matter of law because it was inconsistent with the terms of the collective bargaining agreement between the Trustees and the California Faculty Association. For this reason, Professor Moosa's refusal to comply with the dean's order cannot be characterized as either "[u]nprofessional conduct" or the "refusal to perform the normal and reasonable duties of [his] position." (Ed. Code, § 89535, subds. (b) & (f).)

Deprived of its last remaining support, Professor Moosa's demotion cannot stand. Accordingly, we will reverse the judgment and remand the case to the superior court with directions to grant Professor Moosa's petition for a writ of mandate.

### FACTUAL AND PROCEDURAL HISTORY

The relevant facts are undisputed. Professor Moosa is a professor of finance in the department of finance and management in the college of business at CSUC. He has been a tenured professor there since 1980. Other than an informal letter of reprimand in 1994 for an "unacceptable level of

teaching performance," Professor Moosa had no history of disciplinary action against him before the incidents giving rise to the present proceeding.

As the Board itself acknowledged, Professor Moosa had a "reputation for demanding rigorous work of students." "It was also generally well known that [Professor Moosa] had a rather high withdrawal rate from his classes and that he awarded fewer grades of C or above in his classes than did other finance instructors."

It was, and has always been, Professor Moosa's position that the low enrollment and low grades in his courses were the result of university policies and "the general lack of student preparedness for university level work." As early as 1995, however, the dean of the college of business, Arno Rethans, expressed his view that the problem was rooted in Professor Moosa's teaching performance. Following periodic evaluations in both 1994 and 1995, Dean Rethans initiated another periodic evaluation of Professor Moosa in 1997. Under the collective bargaining agreement between the Trustees and the California Faculty Association, and CSUC's own faculty personnel policies and procedures, Professor Moosa was to be evaluated by a peer review committee consisting of at least three tenured faculty members. Dean Rethans specifically directed the committee and the chair of the department to "[e]xplore with [Professor Moosa] the root causes for the low enrollment in the classes [he] taught [in academic years 1995-1996 and 1996-1997] and make recommendations as to how [his] performance in this area may be improved." As the Board found, however, "Rethans' letter made it clear he had personally concluded that the root cause for the low enrollment in [Professor Moosa's] classes was [Moosa's] deficient performance as an instructor."

In December 1997, two members of the peer review committee assigned to evaluate Professor Moosa issued a report finding "Professor Moosa to be a knowledgeable and resourceful educator with a strong commitment to the teaching profession and the ideal of life long learning." These professors agreed with Professor Moosa that the "root cause" of the low enrollment in his classes was the lack of "prerequisite knowledge and skills possessed by the students," a "serious problem" the dean and other administrators needed to address. These professors offered no recommendations for improving Professor Moosa's teaching performance.

The third member of the peer review committee authored a "minority report." He concurred with his colleagues that Professor Moosa was " 'knowledgeable . . . resourceful . . . with a strong commitment to quality education.' " He further opined that while Professor Moosa "may or may not

be part of the cause for low enrollments . . . it is clear that he is not the sole cause." He made various recommendations about the conduct of any future periodic reviews of Professor Moosa and also recommended that "an assessment of the level of preparedness of the students who take Finance classes needs to be made"; however, like the other two members of the committee, he offered no recommendations for improving Professor Moosa's teaching performance.

In January 1998, the department chair, Van Auken, issued his own report to the dean regarding Professor Moosa's periodic evaluation. He recommended that Professor Moosa "develop a plan that would address . . . the areas of course mechanics, material coverage, testing procedures, and grading practices."

In February 1998, Dean Rethans issued his report on Professor Moosa's evaluation. Concluding that "Professor Moosa's performance in the area of instruction continues to be unacceptable," Dean Rethans instructed Professor Moosa "to develop an improvement plan as suggested by Dr. Van Auken. The plan is to address the issues that have been discussed within the areas of course mechanics, material coverage, testing procedures and grading." The dean instructed Professor Moosa to submit the plan within two weeks for implementation in the spring semester.

Believing Dean Rethans's directive to be "an attempt to entrap [him] in an illegal parallel rogue [review] scheme," Professor Moosa submitted "under protest" as his improvement plan a copy of the majority report of the peer review committee, which, as noted above, offered no recommendations for improving Professor Moosa's teaching performance.

In March 1998, the President of CSUC issued Professor Moosa a "Notice of Demotion" informing him he was being demoted to associate professor "for [his] unprofessional conduct and [his] failure or refusal to perform the normal and reasonable duties of [his] position." The notice alleged seven different bases for the demotion, including his failure to provide the required improvement plan to Dean Rethans. That notice was subsequently withdrawn and replaced in June 1998 with another notice containing the same allegations. In addition to alleging he had failed to submit the improvement plan as directed by Dean Rethans, the notice alleged he had treated students in a demeaning manner, was unresponsive to student requests for assistance, and had used class time to discuss his personal educational philosophy, all of which resulted in unacceptably low enrollment levels in the spring 1998 semester. The notice also alleged he had failed to adhere to CSUC's grading policy and had exhibited a severe lack of collegiality in the materials he submitted to the peer review committee.

Shortly before the demotion took effect in August 1998, it was modified from a permanent demotion to a temporary demotion for five years. Professor Moosa appealed the demotion to the Board and the matter was heard by an administrative law judge (ALJ) on 12 days between November 1998 and September 1999. The ALJ issued his decision in March 2000, finding only two of the seven allegations against Professor Moosa were supported by substantial evidence: that he had failed to adhere to CSUC's grading policy and that he had failed to obey the dean's directive to develop an improvement plan. The ALJ found the five-year demotion "unduly severe" and modified the penalty to a demotion for 18 months. The Board, however, rejected the ALJ's decision and issued its own decision in September 2000, finding only *one* of the seven allegations against Professor Moosa was supported by substantial evidence: the allegation that he failed "to comply with his Dean's directive to develop and submit an 'Improvement Plan.'" The Board concluded Professor Moosa's behavior constituted both "unprofessional conduct and a failure to perform the normal and reasonable duties of a Professor" and found that a demotion to associate professor for one academic year was an appropriate penalty.

Professor Moosa then filed a petition for a writ of mandate in the superior court seeking a writ "overturning the . . . Board's decision . . . and awarding [him] costs and attorney's fees, [and] such other and further relief as is just." The superior court found "substantial evidence to support the Board's finding of willful refusal by [Professor Moosa] to comply with the dean's directive to submit an appropriate improvement plan." The superior court further concluded Dean Rethans had the right to require Professor Moosa to submit an improvement plan, even though "the various allegations of misconduct or deficient performance" were ultimately "not sustained by the Board." Accordingly, the superior court entered a judgment denying Professor Moosa's petition. Professor Moosa now appeals.

## DISCUSSION

■ We begin with the applicable standard of review. "'Review of disciplinary action by an appointing authority is directed in the first instance to the [State Personnel] Board. The Board acts as an adjudicatory body, weighing the evidence to determine the facts and exercising discretion to ascertain whether the charges sustained are sufficient for the discipline imposed. [Citation.] Because the Board is an agency of constitutional authority, its findings of fact are reviewable in an administrative mandamus proceeding under the substantial evidence test. [Citation.] "The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence."'" (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394,

1403-1404 [107 Cal.Rptr.2d 39].) Where the facts are undisputed, however, the ultimate conclusion to be drawn from them is a question of law subject to de novo review. (See *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 375].)

■ Here, the relevant facts are undisputed. In particular, it is undisputed that when Dean Rethans directed Professor Moosa to develop and submit an improvement plan addressing course mechanics, material coverage, testing procedures, and grading, Professor Moosa responded by submitting a copy of the peer review report that concluded he was "an accomplished teacher who is committed to quality instruction and high standard[s] of integrity" and was doing "an outstanding job as an instructor in the class room." As noted above, we agree with the superior court that "[t]here is substantial evidence to support the Board's finding of [a] willful refusal by [Professor Moosa] to comply with the dean's directive to submit an appropriate improvement plan." The question, however, is whether Professor Moosa's refusal to comply with Dean Rethans's order constitutes a valid basis for his demotion under the circumstances of this case. We conclude it does not because Dean Rethans's order was itself invalid.

By statute, any employee who works for the Trustees, whether tenured or not, "may be dismissed, demoted, or suspended for" "[u]nprofessional conduct" or for "[f]ailure or refusal to perform the normal and reasonable duties of the position." (Ed. Code, § 89535, subds. (b) & (f).) Professor Moosa contends his response to Dean Rathans's directive cannot be considered either unprofessional conduct or a refusal to perform the normal and reasonable duties of his position because the directive was unreasonable under the circumstances and, in any event, inconsistent with the collective bargaining agreement. We find merit in the latter assertion.

Dean Rethans's order to Professor Moosa to prepare an improvement plan came as part of a periodic evaluation of Professor Moosa's performance conducted pursuant to article 15 of the collective bargaining agreement between the Trustees and the California Faculty Association. That article provides for periodic performance evaluations of tenured faculty to be conducted at intervals of no greater than five years "by a peer review committee of the department or equivalent unit, and the appropriate administrator." The article contemplates the preparation of reports by both the peer review committee and the administrator and directs that the employee under review is to be provided with a copy of the peer review committee's report. The article also provides that "[t]he peer review committee chair and the appropriate administrator shall meet with the tenured faculty unit employee to discuss his/her strengths and weaknesses along with suggestions, if any, for his/her improvement."

Here, it appears Professor Moosa's evaluation complied with the terms of the collective bargaining agreement up until Dean Rethans *directed* Professor Moosa to develop an improvement plan to improve his teaching performance. There is nothing in the collective bargaining agreement authorizing the dean or any other administrator, as part of a periodic performance evaluation, to direct a tenured professor to engage in any activity, whether or not that activity is aimed at improving the professor's performance as a teacher. On the contrary, the applicable provision in the collective bargaining agreement authorizes only a discussion of the professor's strengths and weaknesses, "along with *suggestions*, if any, for his/her improvement." (Italics added.)

To "suggest" is "to mention (something) as a possibility" or "to propose (something) as desirable or fitting." (Webster's 3d New Internat. Dict. (1981) p. 2286, col. 1.) By definition, an order is the antithesis of a suggestion. While Dean Rethans had the right under the collective bargaining agreement to propose that Professor Moosa develop a plan to improve his teaching performance, he had no right to command Professor Moosa to do so.

The Trustees argue Dean Rethans "had a legal right to direct [Professor Moosa] to develop and submit a teaching improvement plan" and "[t]his right was derived from the Collective Bargaining Agreement." They fail, however, to direct our attention to any part of the agreement that could serve as the basis for such a right, and our own review of article 15 has led us to the opposite conclusion, that Dean Rethans had no authority to order Professor Moosa to develop an improvement plan. Accordingly, we turn to the question of what effect this absence of authority has upon Professor Moosa's demotion for failing to comply with that order.

Although they fail to address the issue directly, the Trustees suggest that even if Dean Rethans lacked authority under the collective bargaining agreement to issue the order, Professor Moosa's refusal to obey the order provides a valid basis for disciplining him. According to the Trustees, if Professor Moosa believed the order was inconsistent with the collective bargaining agreement, he nonetheless should have "obeyed the Dean's order to submit an improvement plan and grieved it later." We disagree.

The Trustees cite no authority for their suggestion that Professor Moosa can be disciplined for refusing to obey an order the dean had no right to give in the first place under the collective bargaining agreement. In a footnote in their brief, the Trustees indicate the Board "has long adhered to this doctrine of 'obey now-grieve later,' " but we are directed to no California law on the subject. What law we have uncovered ourselves suggests a public employee

may refuse to obey an order of his superiors if he has a "legitimate reason" or "valid excuse" for his refusal. (*Frazee v. Civil Service Board* (1959) 170 Cal.App.2d 333, 336 [338 P.2d 943]; see also *Hingsbergen v. State Personnel Bd.* (1966) 240 Cal.App.2d 914, 920-921 [50 Cal.Rptr. 59].) Furthermore, Professor Moosa points us to the general principle of employment law in California that an employee has a duty "of obedience to all reasonable orders of . . . the master, *not inconsistent with the contract.*" (*May v. New York M. Picture Corp.* (1920) 45 Cal.App. 396, 402 [187 P. 785], italics added.) Here, Dean Rethans's order to Professor Moosa to develop an improvement plan was inconsistent with the collective bargaining agreement because the agreement expressly permitted only *suggestions* for improvement. Because the dean's order was inconsistent with the contract, Professor Moosa had no duty to obey that order, and as a matter of law his refusal to obey the unauthorized order cannot be deemed either unprofessional conduct or a refusal to perform the normal and reasonable duties of his position.[1]

Because we have found the sole remaining basis for Professor Moosa's demotion invalid, it necessarily follows that the superior court erred in denying Professor Moosa's petition for a writ of mandate overturning the Board's decision. We will therefore reverse the judgment and remand the case to the superior court for entry of a new judgment granting Professor Moosa's petition. We also will direct the superior court to consider Professor Moosa's request for other relief, including attorney fees.

## DISPOSITION

The judgment is reversed and the case is remanded to the superior court with directions to enter a judgment granting the petition for writ of mandate. The superior court is further directed to consider Professor Moosa's request for attorney fees and other relief. Professor Moosa is awarded his costs on appeal in an amount to be determined by the trial court. (Cal. Rules of Court, rule 26(a)(1).)

Blease, Acting P. J., and Sims, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 15, 2003.

---

[1]Because of our resolution of this issue, we need not address Professor Moosa's other arguments that the Trustees acted in bad faith, that the dean was an "inappropriate administrator" under the collective bargaining agreement, and that his constitutional rights were violated.