[No. F048806. Fifth Dist. Feb. 14, 2007.]

DEPARTMENT OF CORRECTIONS AND REHABILITATION, Plaintiff and Respondent, v.
CALIFORNIA STATE PERSONNEL BOARD, Defendant and Respondent;
DARRELL SNELL et al., Real Parties in Interest and Appellants.

COUNSEL

Wendell J. Llopis for Real Parties in Interest and Appellants.

No appearance for Defendant and Respondent.

K. William Curtis, Warren C. Stracener, Wendi L. Ross and Christopher E. Thomas for Plaintiff and Respondent.

OPINION

**ARDAIZ, P. J.—**

## INTRODUCTION

In a case of first impression, we are asked to determine whether Government Code section 19635[1] bars disciplinary actions against employees of the California Department of Corrections (CDC)[2] based upon their dishonest denials of underlying charges where the underlying charges are barred by section 19635. We do not find that extensive lying during the course of investigative interviews that occurred within the applicable statute of limitations of the matter being investigated merges with the underlying offense. This is consistent with case law saying that dishonesty is a separate act. Thus, section 19635 does not bar the disciplinary actions in this case.

## STATEMENT OF THE CASE

The facts are undisputed. Darrell Snell (Snell), Wayne Villarreal (W. Villarreal), Stephanie Rodriguez (Rodriguez), and Rene Villarreal (R. Villarreal), are employees of CDC. Snell and W. Villarreal are peace officer employees, and Rodriguez and R. Villarreal are civilian employees.

[1] All section citations are from the Government Code, unless otherwise stated.

[2] CDC is currently known as the California Department of Corrections and Rehabilitation. For the purposes of consistency with the prior case history, we will continue to refer to it as CDC.

Pursuant to section 19574, subdivision (a), CDC served various written notices of adverse actions (Notices) imposing disciplinary sanctions upon Snell, W. Villarreal, Rodriguez and R. Villarreal for participating in a pyramid scheme from approximately June of 1996 to September of 1996. Snell and W. Villarreal were suspended for 180 work days, Rodriguez was suspended for 120 work days, and R. Villarreal was suspended for 140 work days.

The Notices alleged various causes for discipline based upon the appellants' participation in the pyramid scheme. These causes included section 19572, subdivision (d)—inexcusable neglect of duty; section 19572, subdivision (r)—incompatible activities; and section 19572, subdivision (t)—other failure of good behavior.

The Notices also alleged section 19572, subdivision (f)—dishonesty, as a cause of discipline. CDC alleged that the appellants were dishonest at various investigative interviews conducted by CDC, in calendar years 1997 and 1998, when they denied any participation in the pyramid scheme.

As alleged in the Notice, Snell was interviewed on August 8, 1997, as a witness. He denied any involvement and firsthand knowledge of the pyramid scheme. He participated in an investigatory interview on December 30, 1997. At this second interview, he denied any involvement in the pyramid scheme.

W. Villarreal was interviewed on December 30, 1997. He denied that he was ever approached or recruited into the pyramid scheme. He denied that he was familiar with the pyramid scheme, or had any knowledge of the pyramid scheme other than through rumors. He denied ever attending any pyramid scheme meeting. He further denied discussing or recruiting for the pyramid scheme on the job. He denied that he conducted or hosted pyramid scheme parties or meetings at his home. He denied that he handled monies relative to the pyramid scheme. Although he was advised that several persons had testified that he was actively involved in the pyramid scheme, and had stated that they had been at his home for recruiting parties for the pyramid scheme, W. Villarreal continued to deny any firsthand knowledge of the pyramid scheme or involvement in it at any level.

Rodriguez was interviewed on November 25, 1997. She denied any involvement in the pyramid scheme including ever being approached, recruiting, investing, attending a meeting during which the pyramid scheme was explained and hosting a pyramid scheme party at her home.

R. Villarreal was interviewed on February 11, 1998. During this interview, she denied all involvement and firsthand knowledge of the pyramid scheme. She denied investing in the pyramid scheme. She denied recruiting for the

pyramid scheme. She denied attending or hosting any pyramid scheme parties. She denied ever having received or handled monies for the pyramid scheme.

Snell was served with a notice on December 14, 1999. W. Villarreal was served with a notice on December 15, 1999. Rodriguez was served with a notice on December 2, 1999, and R. Villarreal was served with a notice on December 13, 1999.

Pursuant to section 19575, subdivision (a), the appellants filed timely appeals with the State Personnel Board (SPB) requesting an administrative hearing to contest the validity of the Notices. The four appeals were consolidated for hearing.

An administrative hearing was held before a duly appointed administrative law judge (ALJ). Appellants repeated their denials at the hearing. The ALJ issued proposed decisions sustaining all disciplinary causes of action contained in the Notices, but modified the imposed suspensions. The ALJ found that Snell's and Rodriguez's denials of involvement in the pyramid scheme were not credible in light of testimony by numerous witnesses. The ALJ found that W. Villarreal and R. Villarreal were dishonest when they denied any knowledge of, or participation in, the pyramid scheme. On July 11, 2001, SPB adopted the proposed decisions of the ALJ, but further modified the imposed suspensions.

The appellants filed a timely petition for rehearing with SPB pursuant to section 19586. SPB granted appellants' petition for rehearing and set the appeals for further hearing and argument.

On August 6, 2002, SPB issued a final decision dismissing all charges contained in the Notices, including the charges of dishonesty. SPB found that the Notices were not served within the three-year limitations period of section 19635, and that the facts did not warrant a finding that CDC was entitled to the fraud discovery exception of that statute. SPB held that dishonesty during an investigatory interview is "a separate and serious charge," but that the dishonesty charges were also untimely. SPB found persuasive appellants' argument that to allow the charges of dishonesty, based upon the appellants' denials of participating in the pyramid scheme, to survive the dismissal of the underlying charges "would defeat the purposes of the statute of limitations set forth in Section 19635."

SPB reasoned that for CDC to prove the appellants' denials to be false and dishonest, CDC must prove the appellants' participation in the pyramid scheme to be factually true. SPB held that such a result would force the

appellants to litigate and defend matters whose litigation is already barred by the statute of limitations. According to SPB, "[t]his 'bootstrapping' of the dishonesty charges to the underlying charges would, in turn, serve to eviscerate one of the primary purposes of a statute of limitations—to prevent the hardship and injustice of having to defend against stale claims after memories have faded or evidence has been lost."

On July 11, 2003, CDC filed a petition for writ of administrative mandamus seeking to set aside SPB's final decision. CDC's petition was heard on May 13, 2005, before the Honorable Rosendo Pena, Jr., of the Fresno County Superior Court.

On July 5, 2005, Judge Pena held that SPB correctly decided that all disciplinary charges related to the employees' participation in the pyramid scheme are properly barred by the statute of limitations of section 19635, and that CDC is not entitled to the fraud discovery exception to that statute. However, Judge Pena also held that SPB erred as a matter of law when it dismissed the dishonesty charges as untimely. The trial court ordered the dishonesty charges reinstated against appellants.

Appellants filed a timely notice of appeal on September 6, 2005. They appeal only from Judge Pena's decision holding that the dishonesty charges were not barred by section 19635.

## DISCUSSION

### I.

### Standard of Review

Neither the appellants nor the respondent contest the factual determinations made by the trial court, or those made by SPB. Where the facts are undisputed, SPB's ultimate conclusion is a pure question of law subject to de novo review. (*Moosa v. State Personnel Bd.* (2002) 102 Cal.App.4th 1379, 1384 [126 Cal.Rptr.2d 321, 325].) Furthermore, we are not bound by SPB's or the trial court's application and interpretation of a statute. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 535, 828 P.2d 672].)

### II.

### *Alameida v. State Personnel Board*

Appellants argue that section 19635 bars the dishonesty charges against them. According to appellants, the dishonesty charges are based upon lies that

merged with, or are derivative of, the underlying misconduct. Given that section 19635 bars charges based upon the underlying misconduct where appellants argue that section 19635 also bars charges based upon lies that merge with, or are derivative of, the underlying misconduct. In support, appellants cite *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46 [15 Cal.Rptr.3d 383] (*Alameida*).

*Alameida* involved the interpretation of section 3304, subdivision (d).[3] In *Alameida*, the "CDC sought to dismiss an employee . . . Nathan A. Lomeli, for immorality, discourteous treatment of the public, failure of good behavior, and dishonesty during interviews investigating these charges." (*Alameida*, *supra*, 120 Cal.App.4th at p. 50.) Lomeli allegedly committed sexual offenses on September 18, 1998, and lied about them by falsely denying them in an interview conducted by CDC on July 12, 2000. (*Id.* at p. 51.) Lomeli was served with a notice of adverse action on November 15, 2000. (*Ibid.*) Lomeli opposed the adverse employment action, and an administrative hearing was held before an ALJ. (*Ibid.*)

"Although the November 15, 2000, Notice of Adverse Action was served less than one year after Lomeli's alleged dishonesty in denying the sex offenses during the investigatory interview on July 12, 2000, the ALJ determined the dishonesty charge could not survive as a separate basis for discipline, because it flowed directly from the investigation of the September 1998 sex offenses, and it would defeat the purpose of [the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.)] to allow the employer to circumvent the one-year limitations period by allowing the agency to prove the underlying charges in order to demonstrate the employee was dishonest in denying the charges." (*Alameida*, *supra*, 120 Cal.App.4th at pp. 51–52.) SPB adopted the ALJ's decision. (*Id.* at p. 52.)

CDC sought a writ of administrative mandamus, and was denied. The *Alameida* court affirmed. It rejected CDC's argument that the one-year statute of limitations in section 3304, subdivision (d) was extended pursuant to section 3304, subdivision (g), which provides an extension where CDC reopens an investigation based upon significantly new evidence that resulted from the public safety officer's predisciplinary response. (*Alameida*, *supra*, 120 Cal.App.4th at pp. 60–61.)

[3] Section 3304, subdivision (d) provides in relevant part that: "[N]o punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998."

The *Alameida* court went on to note that "peace officers in interrogations under the [Public Safety Officers Procedural Bill of Rights] Act do not have the right to remain silent." (*Alameida, supra,* 120 Cal.App.4th at p. 62.) It cited the California Supreme Court case of *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 827 [221 Cal.Rptr. 529, 531–532, 710 P.2d 329] in which our Supreme Court held that "[a]s a matter of constitutional law, it is well established that a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer. Instead, his self-incrimination rights are deemed adequately protected by precluding any use of his statements at a subsequent criminal proceeding." Furthermore, "although the officer under investigation is not compelled to respond to potentially incriminating questions, and his refusal to speak cannot be used against him *in a criminal proceeding*, nevertheless such refusal may be deemed insubordination leading to punitive action by his employer." (*Lybarger v. City of Los Angeles*, *supra*, 40 Cal.3d at p. 828.)

Drawing upon this precedent, the *Alameida* court stated that "[i]t is unseemly to force a person to answer an allegation of misconduct and then punish him for denying the allegation." (*Alameida*, *supra*, 120 Cal.App.4th at p. 62, fn. omitted.) The *Alameida* court also agreed "with the ALJ and the trial court that the denial in these circumstances does not constitute separate actionable misconduct but in effect merges with or is derivative of the alleged underlying misconduct. As phrased by the ALJ, the dishonesty charge flows directly from the investigation of the assault. To allow the dishonesty charge to survive would defeat the purpose of the limitations period, which is to ensure that conduct that could result in discipline should be adjudicated when memories are fresh." (*Alameida*, *supra*, 120 Cal.App.4th at p. 62.)[4]

Although appellants concede that section 3304, subdivision (d) is not the applicable statute of limitations in this case,[5] nevertheless, appellants argue that the holding of the *Alameida* court—that a denial of underlying charges merges with the underlying offenses—can be generalized to all statutes of limitations, including section 19635. We disagree. There is nothing in the plain language of section 19635, or in the purposes of statutes of limitations, that supports a finding that extensive lying during investigatory interviews

[4] SPB also was concerned that the " 'bootstrapping' of the dishonesty charges to the underlying charges would, in turn, serve to eviscerate one of the primary purposes of a statute of limitations—to prevent the hardship and injustice of having to defend against stale claims after memories have faded or evidence has been lost."

[5] Section 3304, subdivision (d) does not apply in this case for several reasons. First, Snell and W. Villarreal are the only public safety officers in this appeal, and section 3304, subdivision (d) only applies to public safety officers. (§ 3301.) Second, their dishonesty occurred during interviews on December 30, 1997, and so was not within the purview of section 3304, subdivision (d), which only applies to misconduct occurring on or after January 1, 1998.

merges with the underlying misconduct that is being investigated. Thus, we do not interpret section 19635 to bar the dishonesty charges here.

## III.

## Interpreting Statutes of Limitations

"The principles governing the proper construction of a statute are well established . . . ." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642, 646].) " 'Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as *context*, the object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject*, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*Id.* at pp. 375–376.)

With respect to statutes of limitations, our Supreme Court has held that "[t]here are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.' [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 [27 Cal.Rptr. 3d 661, 666–667, 110 P.3d 914].)

Thus, we interpret section 19635 by examining its plain language and in light of its purposes.

### A.

### Section 19635

Section 19635 states: "No adverse action shall be valid against any state employee for any cause for discipline based on any civil service law of this

state, unless notice of the adverse action is served within three years after the cause for discipline, upon which the notice is based, first arose. Adverse action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of the adverse action is served within three years after the discovery of the fraud, embezzlement, or falsification."

By its plain language, section 19635 provides that disciplinary action can be imposed on a state employee only if the employee was timely served with written notice of the disciplinary action. The written notice must be served upon the state employee within three years after the cause for discipline first arose, or three years after discovery of fraud, embezzlement, or falsification. (§ 19635.) Moreover, the disciplinary action must be based upon a civil service law of California, or based upon fraud, embezzlement or the falsification of records. (*Ibid.*)

Dishonesty is specifically listed as a cause for discipline in the California civil service law. (§ 19572, subd. (f).) Thus, section 19635 applies to any adverse action based upon dishonesty.

Here, appellants were served with Notices containing dishonesty charges within three years of their dishonest denials at investigatory interviews. Thus, under the plain language of section 19635, appellants could be disciplined for their lies.

### B.

### The Purpose of Statutes of Limitations Does Not Support Barring The Disciplinary Charges

Although appellants concede that dishonesty is categorized as a separate charge under section 19572, they argue that this does not mean that "dishonesty is a separately actionable cause for discipline in the context of the statute of limitations issue presented in this appeal." Appellants contend that section 19635 should be interpreted to bar the dishonesty charges because, here, their lies at the investigatory interviews merged with the underlying misconduct being investigated. According to appellants, to interpret section 19635 otherwise would eviscerate the purposes of statutes of limitations. We disagree.

Lying is a separate and distinct offense from the underlying offense. (§ 19572, subd. (f); *Timothy Welch* (1992) SPB Dec. No. 92-03; *Lachance v. Erickson* (1998) 522 U.S. 262, 267–268 [139 L.Ed.2d 695, 118 S.Ct. 753] [holding that a federal employee can be charged with dishonesty for giving false denials of charged misconduct during an agency's investigatory interview even though the denials were not made under oath; noting that any

claim that employees not allowed to make false statements might " 'be coerced into admitting misconduct, whether they believe that they are guilty or not, in order to avoid the more severe penalty of removal' " for falsification is " 'entirely frivolous' "].)

Moreover, the lying here involved repeated dishonest denials of allegations relating to the underlying misconduct. We do not find that such repeated denials are mere denials of underlying charges to which *Alameida* limited itself. (*Alameida, supra,* 120 Cal.App.4th at p. 62, fn. 10; but cf. *Brogan v. United States* (1998) 522 U.S. 398, 399 [139 L.Ed.2d 830, 118 S.Ct. 805] [rejecting argument that federal statute criminalizing making of false statements has an unwritten exception for the " 'exculpatory no,' " a simple denial of guilt].)

Also, appellants were charged only a few months after the statute of limitations had expired on the underlying misconduct, and they were charged with lying within the limitations period of section 19635. These factual circumstances distinguish this case from *Alameida.* The *Alameida* court, and the SPB in this case, was concerned that discipline should be adjudicated while memories are fresh in order to prevent the hardship and injustice of having to defend against stale claims. (*Alameida, supra,* 120 Cal.App.4th at p. 62.) In this case, however, appellants do not contend that CDC presented witnesses at the hearing before the ALJ whose memories have faded, or that the evidence presented at the hearing was stale, or that exculpatory evidence was lost. As another appellate court has observed, "the policy behind statutes of limitation, which the United States Supreme Court long ago noted is to 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.] No claim slumbered here. No evidence was lost. No witnesses disappeared. Not by a long shot." (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 998 [50 Cal.Rptr.3d 822, 838].)[6]

Appellants argue that permitting dishonesty claims to survive when the dishonest denials occurred within the limitations period of the underlying charges would effectively extend the three-year limitations period in section 19635 into a six-year limitations period for dishonesty charges. According to

[6] We note that the Legislature determines limitations period for policy rationales other than just prevention of surprises through the revival of stale claims. For example, an examination of the limitations periods for crimes suggests that the limitations period depends, to some extent, on the gravity of the crime. Thus, we have no statute of limitations for very serious crimes such as murder (Pen. Code, § 799), six-year limitations period for crimes such as arson causing bodily injury (Pen. Code, § 800), and three-year limitations period for other lesser crimes (Pen. Code, § 801), even though witnesses' memories may have deteriorated in the same manner for these crimes.

appellants, such a holding would permit "a public agency [to] interview an employee about a prior act of misconduct just days before the lapse of the three year limitations period upon that act of prior misconduct, then wait another three years before serving the employee with a notice of adverse action alleging charges of dishonesty based upon the employee's denial at the interview, of any involvement in that prior act of misconduct. This puts an employee in the position of having to defend against prior acts of misconduct over six years old."

Appellants overstate their case. The hypothetical situation presented by appellants is not the situation that occurred in the present case. (*Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 30 [22 Cal.Rptr.3d 615].) Here, appellants only had to defend statements that they made approximately two years before, well within the three-year limitations period of section 19635.

Finally, public policy considerations—including the fact that correctional officers are involved, California's policy against hiring dishonest employees, and the policy favoring honesty over dishonesty—support our finding that extensive lying does not merge with the underlying offense.

First, this case involves state employees who work in our correctional facilities. Appellants are public employees to whom we entrust the care and rehabilitation of criminals. Moreover, two of the appellants are peace officers who are held to a higher standard of conduct than other public employees. (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759 [220 Cal.Rptr. 139, 142].) As such, to find that their lies merge with underlying misconduct and thus are barred by section 19635 would permit appellants to conduct themselves in a manner unbefitting correctional employees.

Second, "[p]ublic employees are trustees of the public interest and thus owe a special duty of integrity." (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 952 [227 Cal.Rptr. 90, 99, 719 P.2d 660].) Moreover, "[b]y its enactment of section 19572, subdivision (f), the Legislature indicated a strong public policy against having dishonest employees in the state service." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 719 [85 Cal.Rptr. 762, 769].) To permit appellants who lied during investigatory interviews and who were charged with violations of section 19572, subdivision (f), to escape unscathed would be contrary to the strong public policy against having dishonest public employees.

Lastly, a contrary finding would encourage lying during investigative interviews because there are no consequences for lying if the lie is not caught prior to the expiration of the limitations period on the underlying misconduct. For example, a finding that the lies merge with the underlying offense would

encourage a rational person to lie where the investigatory interview into misconduct occurred towards the end of the limitations period, as it would be unlikely for the investigator to discover that the denials were lies within the limitations period.

Thus, policy considerations support finding that appellants' extensive lying does not merge with the underlying misconduct. Therefore, section 19635 does not bar the dishonesty charges in this case.

## DISPOSITION

The judgment is affirmed.

Levy, J., and Gomes, J., concurred.