Filed 6/2/25  Jimenez v. State Personnel Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAYMUNDO JIMENEZ, | C098902 |
| Petitioner and Appellant, | (Super. Ct. No. 34-2021-80003769CUWMGDS) |
| v. | |
| STATE PERSONNEL BOARD, | |
| Defendant and Respondent; | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY | |
| Real Party in Interest and Respondent. | |

In 2020, petitioner Raymundo Jimenez was dismissed from employment as a property clerk at the California State University, Fresno (CSU Fresno).  The State Personnel Board (board) upheld the dismissal, and the trial court denied Jimenez's petition for writ of mandate.  On appeal, Jimenez contends the dismissal lacks evidentiary support and was overly harsh.  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Jimenez worked as a property clerk at CSU Fresno for about 14 years. In August 2019, he was put on paid administrative leave after an employee reported suspicions that he was taking CSU Fresno ink and toner cartridges. Two parallel investigations of Jimenez then began: one conducted by the campus police department and the other by the campus human resources department

About seven months later, CSU Fresno issued Jimenez a notice of pending termination and initiated formal disciplinary proceedings against him. Following a hearing conducted under *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*), the *Skelly* hearing officer concluded termination was an appropriate disciplinary action after finding that Jimenez was incompetent and dishonest and had failed to perform the normal and reasonable duties of his position. CSU Fresno then issued a final decision to terminate Jimenez's employment for violations of Education Code section 89535, subdivisions (c), (d), and (f).

I

*Appeal to the Board*

Jimenez filed an appeal with the board. Over the course of a seven-day hearing, the administrative law judge considered 55 exhibits and heard testimony from over 20 witnesses. The evidence generally fell into the following four categories: (1) the cartridges; (2) the lost and found; (3) the public auction; and (4) the termination. We now describe those categories of evidence in the light most favorable to the board's decision. (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 13 (*Fisher*).)

A.     The Cartridges

Jimenez was responsible for the protection, management, disposition, and proper disposal of campus property. That property included any items turned into the CSU Fresno warehouse, including new and used cartridges. Jimenez was specifically trained on how to handle those cartridges. New cartridges would sit on a warehouse shelf for

2

potential use by other campus employees.  Once they neared the end of their shelf life, they would be sold on a CSU public auction website to generate revenue for the campus. Used cartridges were considered hazardous waste and could not be simply thrown away. Instead, they would be collected in a warehouse bin and once the bin was full, they would be transferred to a different department for proper disposal.  Jimenez understood these procedures:  he explained them to his supervisor when his supervisor was first hired, and he described them when he testified at the board hearing.

A police investigation began after a CSU Fresno employee saw Jimenez leaving the warehouse on August 12, 2019, with a black trash bag that the employee thought contained toner cartridges.  As part of the investigation, an officer spoke with Jimenez at the warehouse.  She told him she was investigating toner theft and asked him whether he had ever taken toner.  In response, he "kind of put his head down, and looking up at [her] said I have."  She then asked him how long he had been taking toner, and he responded, "since 2006."  Then he said, "if they don't want me to take it anymore I won't."  When she asked him where the toner came from, "he picked it up out of the box and . . . showed [her], this is the toner."  According to the officer, "there was no confusion" that CSU Fresno was the source of the toner.

The employee who conducted the human resources investigation also questioned Jimenez.  Jimenez provided inconsistent answers regarding the cartridges:  first, he said he could not recall taking them; then, he said it was probably two to three years ago; and then, he said he only took cartridges out of his personal printer on his desk in 2019.  He also said:  (1) he used an outside source to get the cartridges; (2) he had only one Office Depot account; and (3) he redeemed, at most, 10 cartridges per month.  The investigator concluded Jimenez was dishonest during the investigation.

An Office Depot manager confirmed that Jimenez was recycling cartridges in exchange for store credit.  Jimenez used two rewards accounts (one dating back to at least 2009) and sometimes redeemed more than 10 cartridges per month.

The *Skelly* hearing officer testified that Jimenez: (1) admitted to recycling cartridges over many years; (2) described the process of exchanging them at Office Depot or Office Max for store credit; and (3) claimed he used the credits to purchase items for students. The hearing officer also testified that the purchases did not account for the full credit earned nor was any accounting provided for the remaining credit. She specifically disapproved of Jimenez's actions, commenting that spending the credits as he did was inappropriate and that any recycling of CSU Fresno property should be tied to a CSU Fresno account. According to Jimenez's supervisor, Jimenez was not expected to provide beverages or snacks for use in the warehouse.

Jimenez testified that (1) he didn't recall ever taking ink belonging to CSU Fresno, except for two cartridges he inadvertently took in June 2019, and (2) he never explicitly told the investigating police officer that he took CSU Fresno ink.

An employee from a different department testified that his department throws away its used cartridges. Another employee testified that she labels the empty cartridges as "trash." According to one former employee, there was no campus mandate that all departments route their used cartridges to the warehouse. And several employees variously described Jimenez as honest, knowledgeable, and professional.

B.    The Lost and Found

A CSU Fresno manual required campus departments to send lost and found items to the warehouse. The manual also specified how the warehouse would handle those items: items valued at $300 or more would be given a tracking number, logged with identifying information, and held for three months in a secure location; money would be given a serial number, logged, and placed in a lost property account; phones and wallets would be given a serial number, logged with identifying information, and held in a secure location for one week; and weapons would be sent to the campus public safety department. Jimenez was heavily involved in developing the manual. The warehouse made Jimenez responsible for receiving and disposing of all lost and found property.

Another warehouse employee testified that the lost and found duties were not time-consuming and took only around 20 minutes per day to complete. More generally, Jimenez's tasks, minus inventory, required only six hours of work per day.

In accordance with the lost and found procedures, the campus police department would send any lost and found items to the warehouse and attach a tracking report to each item. Jimenez questioned a police department employee as to why tracking was necessary and instructed another warehouse employee to destroy the police tracking reports. The officer conducting the police investigation compared the police logs of lost and found items sent to the warehouse to the logs Jimenez prepared for a 17-month period. She discovered that 12 electronics were missing from Jimenez's log.

Jimenez's supervisor took photos of Jimenez's workspace between August and October 2019 after Jimenez was placed on administrative leave. The photos showed the following items stored in Jimenez's desk drawers: a knife, watches, computer parts, a wallet, weapons, Prada sunglasses, an envelope containing cash, and an envelope labeled "found on Friday 3/15, 2019" containing a necklace. They also showed the following items stored in the drawers of a filing cabinet in his workspace: a broken watch, an envelope dated April 4 containing a Michael Kors bracelet, and a laptop

The *Skelly* hearing officer asked Jimenez about how lost and found worked, and he described how items should be tagged and inventoried. She also specifically questioned him about the items found in his workspace. In response, he told her "there were just a lot of items and there was no real space for them and his area was the space that – that there was most ability, if you will, to monitor . . . the items." He didn't explain why the items weren't entered into the log. He also said that the "items from lost and found were in fact in his area" and were strewn about and not in more secure areas.

At the board hearing, Jimenez admitted the following: (1) the knives, watches, jewelry, and cash were lost and found items; (2) he "kept more sensitive stuff like . . . knives [and] watches" in his desk; (3) he kept jewelry "handy just in case somebody

5

would call for lost and found"; (4) he took a day or two to lock up cash and would not log in cash under $300; (5) there was no documentation for the mix of lost and found and surplus items in one his desk drawers; and (6) he put all cell phones in a box and didn't log them. He claimed he didn't have time to meticulously handle lost and found, didn't have time to clean out his desk during the last year, and did the best he could using his common sense and the training provided.

C.    The Public Auction

Jimenez's duties included managing the sale of surplus CSU Fresno property on a public auction website. In 2009, Jimenez's director noticed that Jimenez and other warehouse employees were buying items on the website. The director then issued a memorandum prohibiting those purchases because he thought they created "bad opportunities and a conflict of interest."

As part of managing the public auction website, Jimenez would determine the value of surplus items, list the items for sale, and communicate with interested buyers. Those communications would include the buyers' names, addresses, email addresses, phone numbers, and other personal information. A CSU manual in effect at the time required campuses to protect "level 2 data," including addresses, phone numbers, and personal emails. According to a CSU Fresno information security officer, buying through the auction website would provide CSU Fresno with level 2 data that should be protected and secured in accordance with CSU policy or executive orders. The information security officer admitted there is no specific campus policy or executive order making it an absolute requirement to use only CSU Fresno email accounts. But he went on to clarify that other policies and practices require the use of CSU Fresno email to avoid security risks to the university.

At one point, Jimenez told his director he wanted to set up an email account for the auction website. In response, the director suggested setting up a generic CSU Fresno email account, explained the need to conduct CSU Fresno business with a CSU Fresno

6

email address, and instructed Jimenez that personal email addresses should not be utilized for campus business.

Jimenez proceeded to use personal email addresses to manage the public auction website. He testified he was unaware of any policies requiring the protection of data he received through those accounts.

D.     The Termination

According to Jimenez's director, Jimenez's property clerk position has the strongest trust level in the department because all campus assets fall under that position. Other CSU Fresno executives echoed this view. The Associate Vice President for Human Resources testified that Jimenez was in a position of autonomy where integrity and trust were important. And the Vice President for Administration and Chief Financial Officer for CSU Fresno explained that the property clerk position is "one of trust, just very similar to a cashier position in accounting and regardless of the amount of the item we have to have honesty and integrity and there can be no gray area when campus assets are at stake, whether it's cash or whether it's property or items that belong to the state of California."

Between 2010 and 2018, Jimenez's performance evaluations were generally satisfactory, aside from a few areas reported as needing improvement, including attendance, time management, quantity of work produced, promotion of university goals, and planning/organization.

Following the 2019 investigations, CSU Fresno executives agreed that terminating Jimenez was appropriate, reasoning as follows: (1) "there is no way to justify taking assets or not securing assets that are to be secured and handled accordingly"; (2) the seriousness of the offense and length of time during which it occurred did not justify progressive discipline; and (3) based on the trust issues and the totality of circumstances, "it needed to go directly to termination." The *Skelly* hearing officer who reviewed the

7

termination decision agreed. In her view, Jimenez clearly understood the procedures regarding the disposition of CSU Fresno property but was not following them.

## II

### *Board Decision, Writ Petition, and Appeal*

The administrative law judge issued a proposed decision upholding Jimenez's dismissal. After making 44 findings of fact and refusing to credit Jimenez's testimony, he concluded as follows: (1) Jimenez's actions regarding the cartridges constituted deceitful and untrustworthy behavior; (2) Jimenez's failure to properly manage the lost and found property reflected incompetence; and (3) Jimenez's use of personal email addresses to conduct CSU Fresno business constituted a failure or refusal to perform the normal and reasonable duties of his position. The August 12, 2019 event that triggered the investigations was not mentioned as a basis for any of these conclusions. Although the administrative law judge acknowledged that dismissal was severe, he found the penalty just and proper because Jimenez betrayed CSU Fresno's trust and confidence.

The board adopted the administrative law judge's proposed decision. Jimenez then filed a petition for writ of administrative mandate. The trial court denied the petition and entered judgment in favor of the board and CSU Fresno. Jimenez timely appealed. The board did not participate in the writ proceeding and has not filed a brief on appeal.

## DISCUSSION

### I

### *Findings*

Jimenez challenges many of the board's findings for lack of substantial evidence. As we explain, we find no merit to these challenges. We begin with the standard of review and then address his challenges.

A.      Standard of Review

Education Code section 89535 allows a permanent CSU employee to be dismissed for specified causes, including dishonesty, incompetency, and failure or refusal to

perform the normal and reasonable duties of the employee's position.  (Ed. Code, § 89535, subd. (c), (d), and (f).)  If requested by the employee, the board must hold a hearing in which it reviews dismissal as an adjudicatory body.  (Ed. Code, § 89539, subd. (b); *Moosa v. State Personnel Bd*. (2002) 102 Cal.App.4th 1379, 1384.)

On appeal, we independently review whether substantial evidence supports the board's findings.  (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487 (*Telish*).)  We do not weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence.  (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492.)  Instead, we view the evidence in the light most favorable to the judgment and draw all inferences in support of that judgment.  (*Ibid*.)  "Only if no reasonable person could reach the conclusion reached by the [board] . . . will a court conclude that the [board's] findings are not supported by substantial evidence."  (*Ibid*.)

Substantial evidence is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could have found as it did.  (*Constancio v. State Personnel Bd.* (1986) 179 Cal.App.3d 980, 985.)  It includes " 'circumstantial evidence and any reasonable inferences drawn from that evidence.' "  (*LaMarr v. Regents of University of California* (2024) 101 Cal.App.5th 671, 676.)  "Even where contradicted by direct testimony, the finder of fact is entitled to accept persuasive circumstantial evidence to the contrary."  (*Norris v. State Personnel Bd.* (1985) 174 Cal.App.3d 393, 398-399.)

B.     The Cartridge Findings

Jimenez contends the record lacks substantial evidence to support the following board findings:  (1) he took cartridges in a black bag on August 12, 2019; (2) he took CSU Fresno-owned cartridges; and (3) CSU Fresno policy specified how to dispose of those cartridges.  Jimenez is mistaken.

Contrary to his first contention, the board did not find that Jimenez took cartridges in a black bag on August 12, 2019.  In fact, the August 12, 2019 event was not mentioned as a basis for the board's decision.  As to the finding that Jimenez took CSU Fresno-

9

owned cartridges, we disagree with Jimenez that the evidence to support this finding was lacking. According to the investigating police officer, Jimenez admitted he had been taking cartridges since 2006. When she asked him where the toner came from, he took a CSU Fresno cartridge out of a warehouse box and showed her. The police officer testified there was "no confusion" that CSU Fresno was his source. This testimony alone was sufficient evidence for the board to conclude that Jimenez admitted to taking CSU Fresno cartridges over an extended period. (See *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823 [testimony from a single witness may provide sufficient evidence].) The board was not required to credit Jimenez's contrary testimony, and we do not disturb the board's credibility findings on appeal. (*Telish, supra*, 234 Cal.App.4th at p. 1496.)

As to the clarity of CSU Fresno policy on cartridge disposal, Jimenez's focus on this issue is misplaced. The critical finding was that Jimenez was dishonest under Education Code section 89535, subdivision (c). The term "dishonesty" connotes an absence of integrity or a disposition to cheat, deceive, or defraud. (*Gee v. California State Personnel Board* (1970) 5 Cal.App.3d 713, 718-719.) The evidence indicated that Jimenez recycled CSU Fresno cartridges with the understanding that doing so was contrary to established procedures and for the purpose of personal gain. A reasonable person could conclude that Jimenez engaged in self-dealing and showed both a lack of integrity and a disposition to deceive. A reasonable person could also find evidence of Jimenez's dishonesty in the human resources investigation. According to the employee conducting that investigation, Jimenez gave inconsistent answers as to whether he took CSU Fresno cartridges, answers that didn't match those he provided in the parallel police investigation. He also told the employee he had only one Office Depot rewards account and redeemed only 10 cartridges per month, both of which proved to be untrue. His lack of candor in the investigation was sufficient to support the board's dishonesty finding. (See *Department of Corrections & Rehabilitation v. California State Personnel*

*Bd.* (2007) 147 Cal.App.4th 797, 806-808 [lying during investigatory interviews supports a finding of dishonesty separate from the underlying offense].)

C.      The Lost and Found Findings

The board found that Jimenez failed to properly handle lost and found items. Jimenez contends the record lacks substantial evidence to support this finding. Specifically, he takes issue with his supervisor's testimony as to items photographed in Jimenez's personal work area. He contends those photos were not taken until up to three months after he was placed on administrative leave, so there was no "chain of custody" or proof as to when those items appeared in his workspace. We are not persuaded. At least three sources provide sufficient evidence that Jimenez mishandled lost and found items.

First, the *Skelly* hearing officer specifically questioned Jimenez regarding the items found in his workspace, and Jimenez admitted that some of those items were lost and found items, that the items were strewn about, and that they were in areas that should have been more secure. Second, at the board hearing, he testified that he kept knives and watches in his desk, kept jewelry "handy," put all cell phones in a box, and didn't lock up cash immediately or at all for smaller amounts. And third, the police officer provided evidence that Jimenez was not logging lost and found electronics that the police department had sent over. These three sources provide substantial evidence to support the mishandling finding.

Jimenez also challenges the board's finding that another employee could perform his duties in less time. Jimenez claims this finding is irrelevant and should be stricken. We disagree. This finding undermined Jimenez's defense that he did not have enough time to perform his lost and found duties. His view that the time estimates were not comparable lacks citations to the record, and we construe any conflicts in the evidence in favor of the board's decision. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156; *Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701.) Jimenez fails to convince us that this finding was improper.

11

D.      The Public Auction Findings

Jimenez asserts three challenges to the board's public auction findings. As we will explain, none have merit.

First, he contends the board lacked substantial evidence to find he had previously purchased surplus property from the website. Jimenez's focus on this finding is misplaced. The board concluded that Jimenez failed to perform the normal and reasonable duties of his position because of his use of personal email accounts to run the auction website. Jimenez's purported purchases on the website did not serve as a basis for any of the board's misconduct findings.

Second, he contends CSU Fresno failed to present evidence that the emails he sent on his private accounts contained data needing protection. And third, he contends there was no CSU policy requiring him to use a CSU Fresno account for the auction website. We disagree with both contentions. Jimenez's director testified that Jimenez would use his private email accounts to communicate with potential buyers on the auction website. Jimenez admitted that those communications included the buyers' names, addresses, email addresses, phone numbers, and other personal information. According to the CSU security information officer, such information requires protection that cannot be provided through personal email. A reasonable person could conclude from the CSU security information officer's testimony that using a personal email address to run a CSU Fresno auction website was improper. But, regardless of whether the CSU Fresno policy was clear, Jimenez's actions were contrary to the director's specific directive to Jimenez that "personal email address[es] should not be utilized for campus business." The board could reasonably conclude that Jimenez failed to follow the director's instructions and thereby failed to perform the normal and reasonable duties of his position.

12

## II

### *Penalty*

Petitioner contends the penalty imposed was too harsh under the circumstances. Specifically, he contends the board erred by failing to consider his past "excellent record" and take progressive discipline.  We disagree.

Whether progressive discipline is appropriate falls within the board's discretion. (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230 (*Talmo*).)  Although termination is the most extreme penalty that can be imposed in the employment context (*County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1615), the board's choice to terminate an employee will not be disturbed on appeal unless the board patently abused its discretion by acting arbitrarily, capriciously, or beyond the bound of reason.  (*Fisher, supra*, 25 Cal.App.5th at p. 21.)  The overriding consideration is the extent to which the employee's conduct resulted in or, if repeated is likely to result in, harm to the public service.  (*Skelly, supra,* 15 Cal.3d at p. 218.)  Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.  (*Ibid.*) But "if reasonable minds may differ as to the propriety of the penalty, there is no abuse of discretion."  (*County of Siskiyou*, at p. 1615.)  No such abuse appears in this record.

There was substantial evidence that Jimenez did the following:  (1) took CSU Fresno property over an extended period for personal gain and in violation of established procedures; (2) mishandled lost and found property contrary to established procedures; (3) used personal email for CSU business contrary to the director's instruction; (4) gained access to data that should have been secured; and (5) displayed dishonesty and a lack of integrity.  Dishonesty alone is incompatible with public trust and is a basis for termination of employment. (*Talmo, supra,* 231 Cal.App.3d at p. 231; *Cvrcek v. State Personnel Board* (1967) 247 Cal.App.2d 827, 828-829 [employee's impermissible taking of documents that were not "particularly remarkable or sensitive" from office file was "relatively unimportant," but his dishonesty about that conduct supported

dismissal].)  Also, a reasonable fact finder could conclude that Jimenez's disregard for directives and procedures governing CSU Fresno property served to discredit the CSU Fresno institution's handling of that property and thereby harmed the public service.

DISPOSITION

The judgment is affirmed.  CSU Fresno is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
MESIWALA, J.


We concur:


/s/
HULL, Acting P. J.


/s/
BOULWARE EURIE, J.