Filed 4/9/14  P. v. Sheppard CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057396 |
| v. | (Super.Ct.No. FVI1201602) |
| DERRICK DJWON SHEPPARD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed in part and reversed in part with directions.

James R. Bostwick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Derrick Djwon Sheppard appeals after he was convicted of one count of petty theft with prior theft convictions and felony vandalism.  He raises issues related to sentencing:  whether the court properly imposed a sentence on the vandalism count, the propriety of the order to pay attorney fees, and the order for victim restitution.  We affirm in part and reverse in part with directions.

FACTS AND PROCEDURAL HISTORY

On the evening of June 19, 2012, the victim, David Simpson, was visiting his girlfriend at her home in Victorville.  He parked his truck in the driveway while he was inside the house.  Sometime later that night, Simpson's girlfriend noticed that the interior light was on in the truck.  Simpson went out to look.  When he opened the door, he saw that the stereo had been removed from the dashboard, and defendant was passed out, asleep, in the passenger seat.  Defendant had Simpson's backpack on his lap.

Simpson ran back to the house and told his girlfriend to call 911.  Soon, three sheriff's deputies responded to the call.  Deputies Ramirez and Ruiz approached the cab of the truck from opposite sides.  Deputy Ruiz, on the driver's side, attempted to rouse defendant by shouting at him, but defendant was not responsive.  Deputy Ramirez, on the passenger side of the truck, smelled a strong odor of alcohol, and believed that defendant was intoxicated.  Deputy Ramirez opened the passenger door and tried to pull defendant from the truck.  As Deputy Ramirez pulled defendant out of the truck, they fell together on the side of the driveway onto the grass.

2

Defendant tried to crawl under the truck, and he kicked Deputy Ramirez twice in the midsection. Deputy Ruiz used his taser, and Deputy Marshall struck defendant with his knee. Eventually, the officers were able to gain control over defendant, and handcuffed and arrested him.

Deputy Ramirez found a pair of pliers on the front seat of the truck that did not belong to Simpson. Simpson's stereo and radar detector were in the backpack.

As a result of these incidents, defendant was charged with one count of petty theft with priors, one count of felony vandalism, and one count of resisting an officer. The information also alleged that defendant had five prison term prior offenses.

The court granted defendant's request to bifurcate proceedings. The prosecutor agreed to dismiss one of the five prior theft-related convictions, and defendant agreed to admit the remaining four. Defendant also admitted, as to the same four convictions, that they were prison term priors within Penal Code section 667.5, subdivision (b). The court also permitted the prosecutor to amend count 2 to charge misdemeanor vandalism, rather than felony vandalism.

A jury found defendant guilty of the petty theft with priors offense, and misdemeanor vandalism, but acquitted him on the charge of resisting an officer. The trial court denied probation and sentenced defendant to the aggravated term of three years for the petty theft with priors, plus a consecutive one-year term for each of the four prison term priors. In addition, the court found that defendant had violated his probation in an

older case, and imposed a consecutive one-year term on the older case. The total term was, therefore, eight years imprisonment, to be served in local jail custody.

At the oral pronouncement of judgment, the trial court apparently failed to impose any sentence with respect to count 2. The clerk's minutes reflect that the court sentenced defendant to 365 days in the county jail on count 2, but the reporter's transcript does not show any such oral pronouncement.

The court awarded defendant 258 days of credit (129 days actual, 129 days conduct credit under Pen. Code, § 4019) for presentence time served. The court also ordered defendant to pay $550 toward the cost of his court-appointed attorney, and ordered that defendant pay a restitution fine of $1,800.

Defendant filed a timely notice of appeal.

## ANALYSIS

I. The Judgment Should Be Modified to Impose and Stay a Sentence on the Misdemeanor Vandalism Conviction

Defendant points out that, although the clerk's minutes reflect that defendant was sentenced to 365 days in jail for the misdemeanor vandalism offense, the oral record in the reporter's transcript does not show that the court actually pronounced the sentence on count 2. Defendant urges that the failure to orally impose a sentence on the vandalism conviction requires that the matter be remanded to the trial court for the purpose of imposing a sentence on count 2. The People also ask for a limited remand for this purpose.

4

In *People v. Alford* (2010) 180 Cal.App.4th 1463, the defendant requested that the matter be remanded to the trial court for a new sentencing hearing, because the trial court had mistakenly implemented Penal Code section 654 by declining to impose (i.e., "staying imposition" of) any sentence on a conviction, rather than imposing and then staying that sentence. The appellate court denied the request to remand to have the trial court impose the missing sentence: "[Remand for this purpose] would mean pulling defendant out of his prison programming and busing him to [the trial court] for a new sentencing hearing that will not change his actual prison time. The futility and expense of such a course militates against it." (*Id*. at p. 1473.) The appellate court imposed the sentence that the trial court "undoubtedly . . . would have imposed" and stayed execution of that sentence. (*Ibid*.) The appellate court noted that it was exercising its "authority to modify the judgment" pursuant to Penal Code section 1260. (*Ibid*.)

"Section 1260 provides: 'The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances.' The power to order remand 'for such further proceedings as may be just under the circumstances,' in our view, permits us to not remand to secure the same goal, i.e., justice under the circumstances." (*People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904 [166 Cal.Rptr.3d 448, 454].)

5

We likewise exercise our authority to modify the judgment, pursuant to Penal Code section 1260, to impose the sentence that the trial court "undoubtedly . . . would have imposed" (*People v. Alford*, *supra*, 180 Cal.App.4th 1463, 1473), i.e., a misdemeanor jail term of 365 days.

It is at this point that defendant interposes his primary contention: the sentence on the vandalism count should be stayed under Penal Code section 654. He argues that, in the circumstances of this case, the theft of the stereo from the truck by removing it from the dashboard was the same act as constituted the foundation of the vandalism conviction: damaging the truck in the course of removing (stealing) the stereo.

The People object that, because the trial court failed to exercise its judicial function in pronouncing the sentence, any ruling on the Penal Code section 654 issue is premature and speculative. We disagree.

As in *People v. Alford*, *supra*, 180 Cal.App.4th 1463, the trial court failed to impose a sentence on a particular conviction. There can be no question, in either case, that the unimposed sentence related to a count for which the sentence ought to be stayed under Penal Code section 654. In *Alford*, the related counts were burglary and grand theft. (*People v. Alford*, *supra*, at p. 1467.) Here, the related counts are the theft (with priors) and misdemeanor vandalism. The theft of the stereo involved removing it from the dashboard of the truck. The vandalism of the truck involved removing the stereo from the dashboard. Each count is based on the same operative facts. "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the

6

meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) Ordinarily, "Whether the acts of which a defendant has been convicted constitute an indivisible course of conduct is a question of fact for the trial court," (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252), but where the facts are undisputed, an issue may be resolved as a matter of law. (See *Moosa v. State Personnel Bd.* (2002) 102 Cal.App.4th 1379, 1385 ["Where the facts are undisputed . . . the ultimate conclusion to be drawn from them is a question of law subject to de novo review."].) Here, on the undisputed facts, defendant manifestly harbored but one objective in the course of committing both offenses: he intended to take the stereo from the truck.

Because both offenses resulted from a single, indivisible course of conduct, we further modify the judgment to stay execution of the jail sentence on count 2, pursuant to Penal Code section 654.

II. <u>The Evidence Was Insufficient to Support the Order for Reimbursement</u>

<u>of Attorney Fees</u>

At sentencing, the trial court ordered defendant to pay $550 to the county in reimbursement of the costs of his court-appointed attorney. Defendant contends that the evidence in the record is insufficient to support this order, because there was no hearing to determine defendant's ability to pay for such reimbursement.

The People first respond that defendant had forfeited the issue by failing to object below at the time the court made its order to reimburse the attorney costs. The People rely for this proposition on *People v. McCullough* (2013) 56 Cal.4th 589. That case, however, involved a booking fee, which is de minimis, and distinguishable with respect to the procedural protections provided for a hearing on the issue of reimbursement of attorney costs.

"Parties may generally challenge the sufficiency of the evidence to support a judgment for the first time on appeal because they 'necessarily objected' to the sufficiency of the evidence by 'contesting [it] at trial.' [Citations.]" (*People v. McCullough*, *supra*, 56 Cal.4th 589, 596.) This principle "may extend to court dispositions other than judgments," when the "claims subjected to appellate review have arisen from contested hearings and have . . . involved findings on which judgment of the court was predicated." (*Ibid*., citing *People v. Butler* (2003) 31 Cal.4th 1119, 1126, fn. 4.)

The California Supreme Court contrasted the ability-to-pay determination with respect to the booking fee with other statutes requiring a similar ability-to-pay determination: "In contrast to the booking fee statutes, many of these other statutes provide procedural requirements or guidelines for the ability-to-pay determination. Certain fee payment statutes require defendants to be apprised of their right to a hearing on ability to pay and afford them other procedural safeguards. (See, e.g., Pen. Code, §§ 987.8, 1203.1b [payment of cost of probation supervision].) Additionally,

8

Government Code section 27755 lists extensive 'procedural rights' that must attend 'any hearing required by law to determine a person's ability to pay court-related costs.' (Id., § 27755, subd. (a); see Welf. & Inst. Code, § 903.45, subd. (b) [listing qualifying court-related costs].)" (*People v. McCullough*, *supra*, 56 Cal.4th 589, 598.) The Legislature imposed no such procedural protections or safeguards with respect to the booking fee determination. (*Id*. at p. 599.)

Penal Code section 987.8, subdivision (b), providing for reimbursement of appointed attorney costs, is one of the provisions the California Supreme Court specifically contrasted with the booking fee provision. Penal Code section 987.8 states in part: "(b) In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, or upon the withdrawal of the public defender or appointed private counsel, the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof. . . ." Notice to the defendant and a hearing are required.[1]

---

[1] Here, defendant contends that the trial court imposed the attorney fee reimbursement without complying with the procedural requirements. Defendant states: "The court's complete remarks on this matter are: 'I'll order the sheriff's department to collect from you $550 for court-appointed counsel fees.'" Defendant argues that he was not given any notice that there would be a hearing on attorney fee costs. The People respond that, because the probation report included a recommendation that defendant be ordered to reimburse the county $550 for appointed attorney costs, defendant was placed on sufficient notice that his ability to pay the attorney costs was in issue at the sentencing hearing. *People v. Phillips* (1994) 25 Cal.App.4th 62 supports the People's contention. There, the court held that reference in the probation report to attorney fee reimbursement was sufficient notice under Penal Code section 987.8 (*id*. at p. 74), and that a hearing on

*[footnote continued on next page]*

Because the determination of ability to pay reimbursement for the costs of appointed counsel requires the procedural protection of a contested hearing, with notice and the ability to present witnesses, it is akin to other determinations where the defendant was deemed to have "'necessarily objected' to the sufficiency of the evidence by 'contesting [it] at trial.'" (*People v. McCullough*, *supra*, 56 Cal.4th 589, 596; *People v. Butler*, *supra*, 31 Cal.4th 1119, 1126, fn. 4.).  Defendant did not forfeit the right to raise the issue on appeal by failing to object below.

As to the merits of the claim, we agree with defendant that the evidence was insufficient to find that he had the ability to pay the ordered amount to reimburse the costs of his appointed attorney.  Penal Code section 987.8, subdivision (g)(2), provides: "(g) As used in this section:  [¶]  . . .  [¶]  (2)  'Ability to pay' means the overall capability of the defendant to reimburse the costs, or a portion of the costs, of the legal assistance provided to him or her, and shall include, but not be limited to, all of the following:  [¶]  (A)  The defendant's present financial position.  [¶]  (B)  The defendant's reasonably discernible future financial position.  In no event shall the court consider a period of more than six months from the date of the hearing for purposes of determining the defendant's reasonably discernible future financial position.  Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to

*[footnote continued from previous page]*
ability to pay attorney fees may be held in conjunction with the sentencing hearing (*id*. at pp. 75-76).

10

have a reasonably discernible future financial ability to reimburse the costs of his or her defense. [¶] (C) The likelihood that the defendant shall be able to obtain employment within a six-month period from the date of the hearing. [¶] (D) Any other factor or factors which may bear upon the defendant's financial capability to reimburse the county for the costs of the legal assistance provided to the defendant."

Here, no evidence was presented at the hearing about any of these circumstances, beyond what was mentioned in passing in the probation report.

As to defendant's present financial position, the probation report indicated that he lived with his parents in a household with two cousins. He had a girlfriend and an infant child. Defendant paid no support for the child. Defendant had debts consisting of medical bills, and no assets. Defendant had only one semester of college, and he had some carpentry and janitorial experience. Defendant "had been working part time, as needed, as a janitor with a family member," and had apparently done so for the past five years.

The People urge that this evidence could support a conclusion that defendant "was supported in part by his parents and girlfriend, and that he had the present and future ability to pay $550 toward the costs of his attorney." To the contrary, the evidence was insufficient to support a conclusion that defendant had any ability to pay reimbursement of the costs of his attorney. For five years, he had at best been employed only part-time, intermittently. He did not have the ability to support himself. He had debts and no

11

assets. The evidence did not show that he had the present ability to contribute to the costs of his appointed counsel.

Defendant urges that, as to his future financial ability to pay, he should also benefit from the presumption in Penal Code section 987.8, subdivision (g)(2)(B), that a defendant sentenced to state prison shall be presumed not to have the future ability to pay the costs of his or her attorney. The People respond that a recent case, *People v. Prescott* (2013) 213 Cal.App.4th 1473, has held that the presumption applies, strictly by its terms, only to defendants sentenced to state prison, and that an inmate sentenced to serve a prison sentence in the county jail, under the Realignment Act, does not benefit from the presumption. (*Id.* at pp. 1476-1478.)

A court's principal objective in interpreting a statute is to determine and give effect to the underlying legislative intent. (Code Civ. Proc., § 1859.) "Intent is determined foremost by the plain meaning of the statutory language. If the language is clear and unambiguous, there is no need for judicial construction. When the language is reasonably susceptible of more than one meaning, it is proper to examine a variety of extrinsic aids in an effort to discern the intended meaning. We may consider, for example, the statutory scheme, the apparent purposes underlying the statute and the presence (or absence) of instructive legislative history. [Citation.]" (*City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722.)

Where the *Prescott* court found no ambiguity in the words "state prison," in Penal Code section 987.8, we find that the language is reasonably susceptible to more than one

meaning. Penal Code section 987.8 has not been amended since 1989, well before the Realignment Act of 2011. It was not possible, when Penal Code section 987.8 was enacted, to serve a sentence of more than one year in a county jail. All such sentences were served exclusively in the state prison. There was no such thing as a "prison" sentence that could be served in local custody in a county jail. The advent of "county prison" sentences as a result of the Realignment Act renders the reference to a "state prison" sentence ambiguous, or susceptible to more than one reasonable interpretation. Manifestly, the reason for the presumption is that confinement in the state prison for a period of years necessarily impedes an inmate's ability to earn. Confinement, in whatever institution, for a period of years, necessarily has the same effect. It is more consistent with the statutory purpose to afford the presumption to "county prison" inmates who, but for the Realignment Act, would have served their sentences in a state prison and who would have had the benefit of the presumption.

In any case, there is no evidence in the record to show that defendant had any future ability to pay, given his eight-year sentence.

The order that defendant pay $550 toward reimbursement of his appointed counsel is reversed.

III.  <u>The Clerk's Minutes Should Be Corrected to Reflect that Defendant Was Ordered to Pay a Restitution Fine, Not Direct Victim Restitution</u>

Defendant points out that the clerk's minutes state that the trial court ordered defendant to pay "restitution to victim" in the amount of $1,800, when in fact the court

ordered defendant to pay a restitution fine of $1,800.  No victim restitution was ordered.

Both parties ask that this court order the minutes to be corrected.  We shall so direct in

the disposition.

DISPOSITION

We order the judgment modified to impose, and to stay, a jail sentence of 365 days

on count 2, the misdemeanor vandalism conviction.  We further reverse the order that

defendant pay $550 to reimburse the costs of his appointed attorney, because such order

was not supported by substantial evidence of defendant's ability to pay.  Finally, we order

the clerk's minutes be corrected to reflect that the trial court imposed a restitution fine of

$1,800; no order for direct victim restitution was made.  With these modifications,

changes, and corrections, the judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
J.

We concur:


HOLLENHORST_____
Acting P. J.


KING_____
J.